[L. A. Nos. 16073, 16162.   In Bank.—April 27, 1937.]

IRWIN H. ROTH, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

S. Ward Sullivan, Jerry Giesler and Marcus R. Brandler for Petitioner.

Philbrick McCoy for Respondent.

THOMPSON, J.—The petitioner herein was charged with a violation of rule 2 of the Rules of Professional Conduct, in that he solicited professional employment, and with a violation of rule 3, in that he employed another for the purpose of soliciting professional employment for him, which person was not at the time a member of The State Bar, and a violation of rule 9, in that he commingled the money of his clients with his own funds. An order to show cause was served on petitioner on August 23, 1935. A local administrative committee found that petitioner had violated rule 2 and rule 3 of the Rules of Professional Conduct and recommended that he be suspended from the practice of law for a period of two years. Thereafter, the board of governors approved the

findings of the local administrative committee but recommended that petitioner be suspended for a period of six months.

On February 25, 1936, another order to show cause was served on petitioner, charging him with violation of rule 3 of Rules of Professional Conduct, and with a violation of his oath as an attorney and counsellor at law, and, particularly, with a violation of subdivision 2 of section 287 of the Code of Civil Procedure.

The local administrative committee found that petitioner was not guilty of violating either rule 3 of Rules of Professional Conduct or subdivision 2 of section 287 of the Code of Civil Procedure. However, the board of governors, upon findings of its own, determined that petitioner was guilty of a violation of rule 3 and guilty of a violation of his oath and duties as an attorney and counsellor at law, within the meaning of subdivision 2, section 287 of the Code of Civil Procedure, and recommended that he be suspended for a period of six months.

Both recommendations of the board of bar governors are now before us for consideration upon petitions whereby petitioner seeks to review the recommendations.

We shall consider the petitions together and make but one order.

At this point we shall briefly review the facts in the first charges. It appears that on June 16, 1935, Ricardo D. Reyes was injured in an automobile accident and taken to the Orange County General Hospital for treatment. Reyes resided at La Habra, at the home of his cousin Florentina R. Castro, and her husband, Savas Castro. On or about June 20, 1935, a young man by the name of Edgar Leon, sometimes referred to in the record as Reyes and sometimes as Cortez, went to the Castro home in his automobile and, upon learning that Reyes was in the hospital and was to be released that day, drove with Mr. and Mrs. Castro to the hospital for the purpose of bringing Ricardo D. Reyes home. From this point, the stories of Reyes and the Castros and of petitioner and Edgar Leon are in conflict, the Castros and Reyes in no unequivocal language testifying that Leon solicited Reyes to employ Roth and that, upon Reyes' consent, he (Leon) brought Roth to him a day or so later, whereupon a contract of employment on a contingency basis was signed. It was also testified that Leon introduced himself as Reyes, saying that

he thought the injured man might be a relative of his. Within a few days after the contract was signed, with the consent of the injured man, a settlement was agreed upon whereby an insurance company gave petitioner a check for $750. Roth secured the check to be endorsed by Reyes and the release signed. He cashed the check, paid the injured man $100, and gave him an undated check for $275. Reyes testified that when he received the check for $275 he was told that he could not cash it, that if he needed any money either he should come into Los Angeles or telephone Roth and he would give it to him. Petitioner's testimony was to the effect that Reyes asked him to hold all but $100 for him, that he needed only $100, and did not want the rest of the money around the house. The fact remains that petitioner did not pay Reyes the sum he had coming to him under the contract of employment until after this proceeding was commenced. His story, corroborated by Leon, is to the effect that someone telephoned him from La Habra, advising him that a friend of his had been injured and asking him to send someone to interview him. The person who is supposed to have telephoned, the petitioner said, was a former client of his, but, significantly, he could not remember his name. It also appears that Leon had served papers and done some work for Roth.

While we are inclined to believe that the board of governors has concluded in accordance with the truth of the situation, we must confess that the record would not be entirely free from doubt, were it not for the second proceeding. The second proceeding, however, and certain other facts to be mentioned subsequently, have convinced us that the petitioner has been soliciting employment in more than the one case.

In the second case, one Frank Mays was injured in an automobile accident during the month of October, 1934, and was thereafter confined as a patient in the General Hospital in Los Angeles. While so confined, George Garrett, an unlicensed person, interviewed Mays and solicited him to employ the petitioner herein to prosecute or compromise his claim for personal injury. As a result of the solicitation, petitioner was employed and secured a settlement for $500 and, in accordance with his contract, reserved to himself therefrom the sum of $166.66 as compensation for his services. Garrett and his partner Evans testified that they received one-half of the sum so retained by Roth, that they had been in the busi--

ness of soliciting employment on behalf of attorneys in personal injury cases, and had solicited employment on behalf of Roth. In fact, they testified that they had been employed by an adjustment agency for the purpose of soliciting and investigating. It also appears from the records in the two cases that petitioner was admitted to practice from the state of Missouri in January, 1931; that very shortly after his arrival he met a man who was running an adjustment agency; that he went to work for the adjustment company, after having looked into the cases of persons who had been suspended for soliciting business through an adjustment company. Petitioner challenged Garrett and Evans to prove cases other than the Mays case in which they had solicited employment of himself, but when Garrett was called for the purpose of so testifying, petitioner successfully objected to the introduction of such evidence upon the ground that it was without the issues and an attempt to prove matters foreign to the record. The further fact should be mentioned that petitioner's conduct in other cases has been the subject of investigation and that he has been employed in other cases under suspicious circumstances.

We entertain no doubt that petitioner has been soliciting the employment of himself through persons who are not entitled to practice law and has been paying those persons for this solicitation, and, from all the circumstances, we are convinced that his conduct has extended over a considerable period of time and that for this reason the recommendation of the board of governors is not an unreasonable period of suspension.

It is, therefore, ordered that petitioner be suspended for a period of six months, said period of suspension to commence thirty days after the filing of this order.

Edmonds, J., Shenk, J., Curtis, J., Langdon, J., and Seawell, J., concurred.