41 Cal.Rptr. 1, 396 P.2d 33]

[L. A. No. 27925. In Bank. Nov. 5, 1964.]

ALBERT R. LINNICK, Petitioner, v. THE STATE BAR
OF CALIFORNIA, Respondent.

Isaac Pacht and Harvey M. Grossman for Petitioner.

Garrett H. Elmore and Herbert M. Rosenthal for Respondent.

THE COURT.—Petitioner was charged by a local administrative committee with five counts of professional misconduct, three of which were subsequently dismissed. The other two counts charged that during the period from April 30, 1958, through December 1960, petitioner, pursuant to agreement, compensated Sam Williams and Donald Cooksey for soliciting professional employment for him. These counts charged violations of the provision of rule 3 of the Rules of Professional Conduct that ''A member of the State Bar shall not . . . remunerate another for soliciting or obtaining, professional employment for him; . . .'' After finding against petitioner on these counts (plus a count charging the commingling of funds) the local committee recommended a three-month suspension. The Board of Governors dismissed the charge of commingling but recommended suspension for two years on the basis of the two remaining counts.

Petitioner contends that the evidence is insufficient to support the finding of the Board of Governors that, pursuant to an understanding, petitioner compensated Williams and Cooksey for referring to him persons having claims for personal injuries and other legal problems. Although the board's ''findings are not binding on this court, which will itself pass upon the sufficiency and weight of the evidence . . . petitioner has the burden of showing wherein the decision of the board is erroneous or unlawful.'' (*Higgins* v. *State Bar,* 46 Cal.2d

241, 242 [293 P.2d 455].) We have concluded that he has met this burden as to his dealings with Cooksey but not as to those with Williams.

## The Williams Transactions

■ Williams was not called as a witness by either side. Petitioner testified that he met Williams in 1956 while doing legal work in connection with a partnership between Williams and another. Between April 30, 1958, and December 1960, Williams referred at least five personal injury cases to him. Although there is no evidence that Williams ever requested or that petitioner ever gave compensation for a specific referral, petitioner admits issuing 13 checks to Williams for a total of $905.20. Four of these checks represent $236.20 collected for him in connection with his partnership. The other checks were issued at times when Williams expressed to petitioner an urgent need for money. Although petitioner frequently refused to give him money, he granted Williams' requests for a total of $669, and he testified that in some instances he authorized his secretary to make specific payments to Williams.

Petitioner's assertion that these payments to Williams were only good faith loans similar to those he made to others not connected with his practice, is contrary to his initial testimony before the local committee, where he candidly admitted, "It is customary in my office for me to make loans and give money . . . to various people, friends especially, and not to expect repayments. That is one way to build up a fairly successful practice. . . ." In Williams' case, ". . . my secondary motivation was obviously because he had done things for me such as referred cases to me. . . ." Petitioner also frankly testified that he responded to Williams' financial need to "Keep him happy, yes. I wanted him to keep sending in the cases, yes."

None of these loans was evidenced by a promissory note, and petitioner admitted "never really considering pressing [Williams] for repayment." Williams, apparently voluntarily, repaid $175. It is true that, at a later hearing, petitioner claimed that he had refreshed his memory going over the records and that he always intended to secure repayment. Since these records were available to him before his initial testimony, however, this subsequent retraction is unconvincing. (Cf. *Higgins* v. *State Bar,* 46 Cal.2d 241, 246 [293 P.2d 455].) Moreover, petitioner now attempts to explain away the contradiction by urging that when he spoke of not expecting to be repaid, he was merely indicating his lack of

confidence in Williams' financial integrity. Before the local committee, however, when asked if he considered Williams a good credit risk, he answered, "No, not particularly," but then added, "To me I knew he would repay if I insisted on it, yes."

Petitioner contends that the absence of a correlation between specific payments and specific referrals demonstrates that he had no understanding with Williams. In his initial testimony, however, he acknowledged that Williams "didn't ask for [payments] in words, but because he recognized the fact that he was referring cases to me . . . he again wasn't doing anything for nothing, or at least if I was getting benefit he would like to be benefited." This testimony and petitioner's admission that he compensated Williams for "the favors he was doing by referring cases to me . . ." establish that there was at least a tacit working arrangement between them.

Since there is no evidence that Williams solicited the cases he referred, petitioner contends that even if he compensated Williams to maintain a stream of referrals, such conduct is not a basis for discipline. Rule 3 of the Rules of Professional Conduct, however, prohibits an attorney from remunerating another for either "soliciting" or "obtaining" employment for him. Whether or not a lay intermediary solicits the business referred, he may not keep the best interests of the clients paramount when he profits from his referrals. He is likely to refer claimants, not to the most competent attorney, but to the one who is compensating him. (See *Hildebrand* v. *State Bar*, 36 Cal.2d 504, 521, 523 [225 P.2d 508] [concurring opinion by Traynor, J.]; *Guides to Professional Conduct for the New California Practitioner*, 36 State Bar J. 1013, 1020-1021; *Ambulance Chasing and Related Evils*, 7 State Bar J. 22, 23.) Hence, although there is no evidence that Williams solicited strangers, or that he was paid for specific referrals, the relationship between Williams and petitioner created the risk that rule 3 is designed to prevent.

### The Cooksey Transactions

When the State Bar called Cooksey as a witness he successfully invoked the privilege against self-incrimination. Petitioner testified that Williams introduced him to Cooksey, a member of the California Highway Patrol, in 1957. Cooksey referred his first case in 1958 or 1959 and was responsible for at least 10 direct referrals. Other patrolmen, introduced by

Cooksey to petitioner, referred another 20 to 30 cases. At the preliminary hearing and before the local committee, in contrast with his testimony with respect to Williams, petitioner flatly denied compensating Cooksey for these referrals in any manner. He suggested that Cooksey referred cases because he enjoyed the reflected glory of association with a prosperous lawyer and hoped to learn of money-making business deals from him.

With regard to four checks for a total of $1,125 issued to Cooksey in 1960, petitioner testified that one, for $125, represented the proceeds from settlement of an accident case in which petitioner represented Cooksey's daughter. A second check, for $500, was advanced on Cooksey's representation that his daughter needed an operation. Two other checks were issued at Cooksey's request, but the record does not specify the reason. As to these three checks, in contrast to his testimony concerning Williams, petitioner clearly stated from the beginning that they were loans to Cooksey. When they were made, he expected they would be paid out of the settlement of a personal injury claim he was then handling for Cooksey.

Petitioner testified that he felt very friendly to Cooksey and denied that he was motivated in making these loans by an expectation of a flow of referrals. With perhaps one exception, Cooksey made his referrals in 1958 and 1959, and petitioner did not make his first loan until after Cooksey was injured in 1960. It is possible that petitioner made his payments in recognition of past referrals and in the hope of insuring future referrals, but the evidence is not sufficient to warrant that conclusion.

The only other testimony concerning petitioner's dealings with Cooksey was that on December 27, 1960, two investigators for the District Attorney of Los Angeles County visited Cooksey's home in connection with an alleged conspiracy to "rig" accidents. With Cooksey's permission, they installed an induction coil and then listened to and recorded a telephone conversation between Cooksey and petitioner. (Cf. *People* v. *Malotte,* 46 Cal.2d 59, 64 [292 P.2d 517].) No transcript was made, and, as usual, the tape was erased a year after the close of the relevant criminal case. One investigator testified that when Cooksey asked about moneys for certain persons, petitioner admitted making payments to Cooksey but stated that he had not done anything wrong and that he had given a lot of money as advances on the case he was handling for Cooksey. Although the other investigator could not remember

whether the conversation included references to referrals, he remembered that petitioner vehemently denied wrongdoing with respect to payments he made to Cooksey. Although petitioner admitted undertaking a case for a patrolman referred by Cooksey, he denied paying Cooksey for the referral or that the officer's name came up in the telephone conversation. The investigators' testimony casts some doubt on petitioner's denials, but, in view of the infirmities in their testimony, we resolve these doubts in favor of the accused. (*Black* v. *State Bar*, 57 Cal.2d 219, 222 [18 Cal.Rptr. 518, 368 P.2d 118]; *Brawner* v. *State Bar*, 48 Cal.2d 814, 818 [313 P.2d 1].)

It is contended that the board's findings do not conform to the charges stated in the notice to show cause, and that the variance disabled petitioner from preparing an appropriate defense. The two counts charged petitioner with a scheme designed for the purpose of solicitation. The findings were framed in terms of an understanding pursuant to which petitioner compensated Williams and Cooksey for referring claimants to him, and they omit reference to the solicitation charged. Such a variance may be so prejudicial as to result in a miscarriage of justice. (Rules of Procedure, rule 29; cf. *Coviello* v. *State Bar*, 41 Cal.2d 273, 276 [259 P.2d 7].) The board's findings here, however, state violations of rule 3 of the Rules of Professional Conduct, which forbids giving remuneration for "soliciting or obtaining" professional employment. In many cases it may be difficult for the local committee to determine whether "soliciting" or "obtaining" is involved, and it should therefore frame such charges in the alternative. In this case, however, the notice to show cause charged petitioner with violating rule 3 in clearly specified circumstances. Hence he was adequately notified for the purpose of preparing his defense, and no prejudicial surprise appears. (See Rules of Procedure, rule 29.)

Petitioner contends that the examiner was guilty of prejudicial misconduct before the Board of Governors in asking questions that suggested a link between petitioner and a notorious character. The board, however, struck this part of the questioning from the record, and we have disregarded it completely.

In view of our determination with respect to the Cooksey transactions, our review of similar cases decided by this court (*Honoroff* v. *State Bar*, 50 Cal.2d 202 [323 P.2d 1003]; *Mitton* v. *State Bar*, 49 Cal.2d 686 [321 P.2d 13];

*Higgins* v. *State Bar,* 46 Cal.2d 241 [293 P.2d 455]; *Roth* v. *State Bar,* 8 Cal.2d 656 [67 P.2d 337]; *McCue* v. *State Bar,* 4 Cal.2d 79 [47 P.2d 268]), and the fact that petitioner has no prior disciplinary record, we conclude that the two-year suspension recommended by the board is too severe and that the discipline recommended by the local committee is sufficient. (*Browne* v. *State Bar,* 45 Cal.2d 165 [287 P.2d 745]; *Lowe* v. *State Bar,* 40 Cal.2d 564 [254 P.2d 506]; *McGrath* v. *State Bar,* 21 Cal.2d 737 [135 P.2d 1].)

It is ordered that Albert R. Linnick be suspended from the practice of law for a period of three months commencing 30 days after the filing of this opinion.

Mosk, J., did not participate.