Stephen D. TROTTER, Appellant–
Defendant,

v.

Lesa NELSON, Appellee–Plaintiff.

No. 57A05–9412–CV–472.

Court of Appeals of Indiana.

Nov. 9, 1995.

Kurt Bentley Grimm, Auburn, for Appellant.

## OPINION

SHARPNACK, Chief Judge.

This case comes to us on interlocutory appeal. The sole issue raised is whether a fee splitting agreement between Stephen Trotter, a lawyer, and his nonlawyer employee violates public policy and is, therefore, unenforceable. Trotter appeals the denial of partial summary judgment by the trial court on the issue of breach of contract. We affirm.

Trotter is an attorney licensed to practice law in Indiana. Lesa Nelson is Trotter's former employee who worked for him from July 1986 until the end of 1989. Nelson is not admitted to practice law in any jurisdiction.

Nelson alleges she and Trotter had an agreement, beginning in early 1987. This agreement provided that Trotter would pay Nelson five percent of any money received for personal injury cases referred by Nelson or someone on her behalf. Under the agreement, Trotter would pay Nelson when she referred cases which "result[ed] in the establishment of an attorney-client relationship with the Defendant and result[ed] in the recovery of attorneys fees for the benefit of the Defendant." Record, pp. 32–33. Nelson initiated this suit charging Trotter with breach of contract by not paying her.

Additionally, Nelson directed a request for investigation to the Supreme Court Disciplinary Commission. This complaint charged that Trotter had entered into an unethical fee splitting agreement with Nelson and other employees in Trotter's firm. The Commission dismissed the complaint "as being without merit" and specifically found that the complaint "does not raise a substantial question of misconduct which would warrant disciplinary action." Record, p. 51.

Trotter denies there was an agreement. However, assuming an agreement did exist, Trotter argues that the agreement violates Rule 7.3(f) of the Rules of Professional Conduct. He maintains that a violation of Rule 7.3(f) is repugnant to public policy and renders the contract unenforceable. Trotter asserts the illegality of the contract as an affirmative defense to this action and argues that the agreement's illegality entitles him to judgment as a matter of law. Consequently, he argues, the trial court erred in denying his motion for summary judgment. We disagree.

In applying our standard of review we must first consider Nelson's failure to submit an appellee's brief. In such a situation, this court need not undertake the burden of developing arguments for Nelson. Applying a less stringent standard of review with respect to showings of reversible error, we may reverse the lower court if appellant can establish *prima facie* error. *Fisher v. Board of School Trustees* (1986), Ind.App., 514 N.E.2d 626, 628. *Prima facie*, in this context, is defined as "at first sight, on first appearance, or on the face of it." *Johnson County Rural Elec. v. Burnell* (1985), Ind. App., 484 N.E.2d 989, 991. Where an appellant is unable to meet such a burden, we will affirm. *Blair v. Emmert* (1986), Ind.App., 495 N.E.2d 769, 771, *reh'g denied, trans. denied.*

Next, we must address our standard of review for denials of summary judgment. Initially, we note that we are bound by the same standard as the trial court. *City of Evansville v. Moore* (1990), Ind., 563 N.E.2d 113. Summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Ed Wiersma Trucking Co., v. Pfaff* (1994), Ind.App., 643 N.E.2d 909. We may only consider those portions of the pleadings, depositions, answers to interrogatories, and other matters designated to the trial court by the moving party for purposes of the motion for summary judgment. *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434; Ind.Trial Rule 56(C), (H). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.*

(1991), Ind., 575 N.E.2d 630, 633. Thus, for purposes of this appeal only, we will assume that a fee splitting agreement existed between the parties. Proceeding on that assumption, we are faced with the issue of whether violation of a Rule of Professional Conduct could serve as an affirmative defense to a contract action. Trotter argues the alleged agreement violates Rule 7.3(f) of the Rules of Professional Conduct. The rule provides:

"A lawyer shall not compensate or give anything of value to a person or organization to recommend or secure his employment by a client, or as a reward for having made a recommendation resulting in his employment by a client, . . . ."

Prof.Cond.R. 7.3(f). Trotter's request to hold the contract void would require us to allow him to use his own violation of the Rules as a defense to civil liability. We are unwilling to do so.

■■■ The Rules of Professional Conduct govern the conduct of attorneys. The Code of Professional Responsibility governed attorney conduct until 1987 when the Rules replaced the Code. *Deuitch v. Mathes* (1987), Ind.App., 511 N.E.2d 307, 310 n. 1, *reh'g denied, trans. denied.* The preamble to the Rules states in part:

"Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability, but reference to these rules as evidence of the applicable standard of care is not prohibited. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a [lawyer's] self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule."

Ind.Rules of Professional Conduct Preamble, Scope. We have observed that the Code lacks the force and effect of Indiana statutes or case law. *Kizer v. Davis* (1977), 174 Ind. App. 559, 369 N.E.2d 439, 443. In *Kizer,* we noted that the Code served as the proper standard for the legal profession and specifically operates as the rule of law in disciplinary proceedings before the supreme court. *Id.* This reasoning also applies to the Rules which succeeded the Code. The preamble of the Rules explains that a nonlawyer may not use a violation of the rules as a basis for civil liability. Likewise, we find the contrary assertion to be true; an attorney may not use the Rules as a basis to evade civil liability. Therefore, Trotter should not be permitted to defend this lawsuit on the basis that his conduct violates the Rules of Professional Conduct.

Moreover, Trotter devotes much of his brief to analyzing case law which supports his contention that contracts will be void if they violate a statute. Trotter cites a number of cases including *Kaszuba* and *Hoffman.*

Although Trotter relies on our holding in *Kaszuba,* our judgment was vacated by the supreme court. *Kaszuba v. Zientara* (1986), Ind.App., 495 N.E.2d 761, *vacated,* 506 N.E.2d 1, *reh'g denied.* We had held that a contract between two Indiana residents to purchase an Illinois lottery ticket was unenforceable because it violated Indiana's statutory prohibition against gambling and the public policy behind it. *Kaszuba,* 495 N.E.2d at 763. The supreme court found that the public did not benefit by invalidating the contract and that the agreement was not evil or immoral. *Kaszuba,* 506 N.E.2d at 2–3.

Additionally, we find the facts of this case distinguishable from *Hoffman* and its holding inapplicable. In *Hoffman* we held a contract void because it violated a statute requiring a real estate broker to have a license. *Hoffman v. Dunn* (1986), Ind.App., 496 N.E.2d 818. However, this action does not concern the violation of a statute. Rather, we have determined that the Rules do not have the effect of a statute. *See Kizer,* 369 N.E.2d at 443.

■■■ Next, we must address Trotter's contention that the Rules are designed to protect the public, and therefore, that this

agreement is contrary to public policy. Public policy is derived from constitutional and statutory enactments and judicial decisions. *Schornick v. Butler* (1933), 205 Ind. 304, 185 N.E. 111. Long ago, the supreme court analyzed the rather amorphous concept of "public policy", stating:

> " 'Without minimizing the importance of the doctrine that contracts should not be enforced if they contravene public policy, many courts have cautioned against recklessness in condemning contracts as being in violation of public policy. Public policy, some courts have said, is a term of vague and uncertain meaning.... ' "

*Schornick v. Butler* (1933), 205 Ind. 304, 185 N.E. 111, 112–113, *reh'g denied* (quoting *Hogston v. Bell* (1916), 185 Ind. 536, 112 N.E. 883). The supreme court has determined that the power to invalidate a contract on public policy grounds should be used carefully and only in cases "free from doubt." *Id.* Additionally, whenever a court considers invalidating a contract, the court must always weigh the parties' freedom to contract. *Allstate Insurance Co. v. Boles* (1985), Ind., 481 N.E.2d 1096, 1101. Thus, whether a contract violates public policy is a question of law for us to determine based upon all the circumstances. *Stampco Construction Co. v. Guffey* (1991), Ind.App., 572 N.E.2d 510, 513. However, where there is not a clear manifestation of public policy, we will invalidate a contract only if it has the tendency to injure the public, is contrary to the public good, or is inconsistent with sound policy and good morals. *Straub v. B.M.T.* (1994), Ind., 645 N.E.2d 597, 599, *reh'g denied.*

In considering all of the circumstances of this case, we find that the Trotter–Nelson contract is not contrary to public policy as a matter of law and, therefore, is enforceable. In making this determination, the primary focus is whether there is a clearly delineated public policy. Our review of Indiana case law and statutes convinces us that no such clear policy exists. In addition, the parties are free to contract as they see fit. The Rules of Professional Conduct do govern attorney conduct, but they explicitly exclude a violation of the rules as a basis for civil liability. *See* Rules of Prof.Cond.Pmbl.

They serve primarily as a basis to discipline attorneys through the Supreme Court Disciplinary Commission. We are unwilling to expand the breadth of the Rules by allowing their use as a defense in a civil action. Moreover, we are not persuaded that the invalidation of this contract furthers the public good. Rather, invalidation of this contract harms the public by denying Nelson, a nonlawyer, the benefit of her bargain.

█ Finally, we are not fearful that our decision today will create undesirable precedent. However tempting it may be for a lawyer to engage in a fee splitting arrangement, our decision here should not be taken to condone such actions. While the Rules of Professional Conduct may not serve as the basis for civil liability, they continue to serve as the basis for disciplinary action of an attorney. Thus, an attorney engaging in a such a practice is subject, in appropriate cases, to the full discipline of the supreme court, including disbarment from the legal profession.

Accordingly, we do not find the contract to be unenforceable as a matter of law. Therefore, the trial court properly denied Trotter's motion for partial summary judgment.

For all of the foregoing reasons, the judgment is affirmed.

AFFIRMED.

RUCKER, J., concurs.

SULLIVAN, J., concurs in result with opinion.

SULLIVAN, Judge, concurring in result.

The majority opinion notes that: "an attorney engaging in [a fee splitting arrangement] is subject, in appropriate cases, to the full discipline of the supreme court, including disbarment from the legal profession." Op. at 429. Of course, that avenue is foreclosed in this case because our Disciplinary Commission has already determined that the ethics complaint "was without merit" and that the complaint did "not raise a substantial question of misconduct which would warrant disciplinary action." Record at 51. Given the nature of the controversy, the Commission's determination necessarily concluded

that there was no such agreement. If there were such an agreement, it would, on its face, violate Rule 7.3(f) of the Rules of Professional Conduct.

Be that as it may, the factual determination made by the Commission has no bearing upon the facts alleged and susceptible to proof in this civil proceeding for breach of contract.[1] For this reason, I agree that "for purposes of this appeal only," we may "assume that a fee splitting agreement existed between the parties." Op. at 428.

The majority decision today holds that invalidation of this fee splitting contract does not further the public good and that to the contrary, invalidation would "harm the public by denying Nelson, a nonlawyer, the benefit of her bargain." Op. at 429. The decision approves, as within acceptable public policy, agreements or arrangements which revolve around "ambulance chasing" and employment of agents for solicitation of legal representation. It says diminishing the integrity of the profession is acceptable to the citizens of Indiana so long as it is a non-lawyer who benefits from the conduct. I respectfully disagree with that analysis of public policy and that analysis of the right of persons to freely contract.

Nevertheless, upon authority of *Kaszuba v. Zientara* (1987) Ind., 506 N.E.2d 1, *reh'g denied*, I am compelled to concur in result. That case involved an Indiana agreement concerning lottery activity, which though legal in Illinois, was illegal and contrary to the then public policy of Indiana. The court held that the contract, though contrary to Indiana public policy, was nevertheless enforceable because the basic conduct contemplated by the contract would be legal where the conduct occurred. Thus before Indiana's constitutional amendment which changed the public policy, our supreme court approved conduct formerly thought to be illegal and unenforceable. Upon this rationale, I am able to concur in the determination that the trial

court did not err in denying the motion for partial summary judgment.

---

1. The Scope of the Rules of Professional Conduct states: "Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules ... are not designed to be a basis for civil liability, but reference to these rules as evidence of the applicable standard of care is not prohibited." Conversely, a determination that there has not been a violation of the Rules does not give rise to a defense to a civil action.