**Stephen D. TROTTER, Appellant (Defendant Below),**

v.

**Lesa NELSON, Appellee (Plaintiff Below).**

No. 57S05–9604–CV–288.

Supreme Court of Indiana.

Sept. 12, 1997.

Kurt Bentley Grimm, Grimm & Grimm, P.C., Auburn, for Appellant.

Max A. Myers, Fort Wayne, for Appellee.

Robert D. Brown, Spangler, Jennings & Dougherty, Merrillville, a Amicus Curiae.

## ON PETITION TO TRANSFER

SELBY, Justice.

This is an interlocutory appeal from the Noble Superior Court. The issue before this Court is whether the trial court erred in denying attorney Stephen Trotter's ("Trotter") motion for partial summary judgment regarding an alleged agreement with non-attorney Lesa Nelson ("Nelson") whereby Nelson claims she was to receive money for referring clients to Trotter. The Court of Appeals affirmed the trial court's decision, holding that the alleged agreement was not "unenforceable as a matter of law." *Trotter v. Nelson,* 657 N.E.2d 426 (Ind.Ct.App.1995). The question which we must answer is whether a referral fee agreement between an attorney and a non-attorney employee is against public policy and, therefore, unenforceable.[1] We earlier granted transfer and now hold that the alleged agreement is against public policy and is unenforceable.

## FACTS

This case concerns a disagreement concerning the amount that an employer owes to a former employee for her past services. Stephen Trotter is a licensed attorney who practices in Fort Wayne, Indiana. Lesa Nelson is a former employee of Trotter's. She worked for Trotter from July 1986 through the end of 1989. Although the record is unclear as to a specific job title or description, Nelson began her employment in what was essentially a clerical capacity and her duties and responsibilities enlarged over time. Nelson was not educated or trained as a lawyer and does not hold a license to practice law.

---

1. We note from the outset that our review is limited to this narrow question. Trotter asserted in his motion for summary judgment that the alleged agreement is unenforceable. Nelson answers in her response that the only question is whether the alleged agreement would be enforceable. Other claims or theories asserted by Nelson for remuneration, should they exist, are not before us on this appeal.

Nelson initiated this suit because she believed that Trotter had not fully compensated her for the work that she had done. One of her allegations is that she and Trotter had an agreement, beginning in early 1987, whereby she was to receive five percent of any fees which resulted from a personal injury or worker's compensation case that she had a role in referring to Trotter. There is no written recording between the parties as to the alleged agreement.[2]

At trial, Trotter moved for partial summary judgment on the alleged agreement. Trotter argued that the alleged agreement did not exist, and, even if it did, it was against public policy and therefore unenforceable. The trial judge denied the motion. The court concluded that "material issues of fact exists concerning the parameters of the agreement or understanding between Plaintiff and the Defendant on the payment of periodic bonuses or referral fees."

## DISCUSSION

 We first note that the issue before us is the propriety of a denial of summary judgment. Our appellate standard of review for summary judgment rulings is well established. As a reviewing court, we are bound by the same standard as the trial court. *Webb v. Jarvis*, 575 N.E.2d 992, 994 (Ind. 1991). The standard is that summary judgment is warranted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.;* Ind.Trial Rule 56(C). Just as the trial court, we may only consider those parts of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and other matters which have been designated by the parties to the trial court for consideration. T.R. 56(C); *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993). "Any doubt about the existence of a fact or the inference to be drawn from it is to be resolved in favor of the non-moving party." *Webb*, 575 N.E.2d at 995. For purposes of this appeal only,

therefore, we must assume that the agreement alleged by Nelson did exist.

Trotter's argument at trial and on appeal is that, even assuming that the agreement existed, such an agreement would be contrary to public policy and thus unenforceable. Trotter notes, and we agree, that the alleged agreement as described by Nelson is a referral fee agreement. The alleged agreement would require Trotter to pay Nelson "five percent of the attorney's fees realized by [Trotter], on certain personal injury cases directed by or through [Nelson] to his office" if any of those cases resulted in attorney's fees for Trotter. (R. at 32.) This agreement, Trotter argues, violates Indiana Rules of Professional Conduct 7.3(f). Because the alleged agreement violates the Professional Conduct Rules, Trotter concludes, it violates the public policy of Indiana and is unenforceable, and, thus, the trial court erred in denying his motion.

Nelson, on the other hand, argues that the alleged agreement is not a referral fee agreement. Rather, she counters, the agreement is a profit sharing plan which is permitted by Conduct Rule 5.4(a)(3). Thus, she concludes, the agreement is not against public policy and it is enforceable, and the trial court was correct to deny the motion for summary judgment.

### I. Public Policy

 Indiana courts have long recognized and respected the freedom to contract. We recognize a "very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties." *Continental Basketball Association, Inc. v. Ellenstein Enterprises, Inc.*, 669 N.E.2d 134, 139 (Ind.1996). However, in certain circumstances a court may declare an otherwise valid contract unenforceable if it contravenes the public policy of Indiana. *Id.;* *Straub v. B.M.T. by Todd*, 645 N.E.2d 597, 598 (Ind. 1994).

 Public policy is a term not easily defined. In the past, Indiana courts have noted that we first look to the Constitution,

2. Nelson also filed a request with the Indiana Supreme Court Disciplinary Commission to investigate the alleged agreement. The Commis-

sion denied her request. The disposal of Nelson's complaint by the Disciplinary Commission is not dispositive of this case.

the legislature, and the judiciary for explicit declarations of public policy. *See Straub*, 645 N.E.2d at 599; *Franklin Fire Insurance Co. v. Noll*, 115 Ind.App. 289, 58 N.E.2d 947, 950 (1945). In the absence of such a declaration, we would next look to whether it can be clearly shown that the agreement "has a tendency to injure the public, or is against the public good, or is inconsistent with sound policy and good morals as to the consideration or as to the thing to be done or not to be done." *Id.; Straub*, 645 N.E.2d at 599. Whether a contract is against public policy in this situation would be a question of law dependant on the circumstances of the particular case. *Id.*

▮ Recently, this Court re-emphasized this analysis. *See Continental B–Ball*, 669 N.E.2d at 139; *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1130 (Ind.1995). We categorized three situations where courts have refused to enforce private agreements on public policy grounds: "(i) agreements that contravene statute; (ii) agreements that clearly tend to injure the public in some way; and (iii) agreements that are otherwise contrary to the declared public policy of Indiana." *Continental B–Ball*, 669 N.E.2d at 139. We further noted that, depending on the category, we must approach the analysis in different manners. If an agreement is in direct contravention of a statute, "then the court's responsibility is to declare the contract void." *Id.* at 140; *see also Straub*, 645 N.E.2d at 599; *Franklin Fire Ins. Co.*, 58 N.E.2d at 950. If, however, the agreement falls into the more amorphous category of "otherwise contrary to the declared public policy of Indiana," then the court must balance five relevant factors:

(i) the nature of the subject matter of the contract; (ii) the strength of the public policy underlying the statute [3]; (iii) the likelihood that refusal to enforce the bargain or term will further that policy; (iv) how serious or deserved would be the forfeiture suffered by the party attempting to enforce the bargain; and (v) the parties' relative bargaining power and freedom to contract. *Continental B–Ball*, 669 N.E.2d at 140; *Fresh Cut, Inc.*, 650 N.E.2d at 1130.

▮ The Rules of Professional Conduct, as enacted by this Court, contain both implicit and explicit declarations of public policy.[4] The Indiana Rules of Professional Conduct exist, to a large extent, as a means of protecting the interests of the public as potential clients. *See Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 342–344 (Ind.1991). "These Rules and this Court's willingness to enforce them help ensure that the public is well served by the bar. Forces that undermine the standards on which the Rules of Professional Conduct are founded disserve the public by weakening the client-lawyer relationship." *Picadilly*, 582 N.E.2d at 342. Certain of the Rules are explicit declarations of what an attorney can or cannot do. They are "cast in the terms 'shall' or 'shall not.'" Prof.Cond.R.Preamble, Scope. Some of these imperatives concern agreements that an attorney can or cannot enter into. The Rules at issue in this case (Rules 5.4(a) and 7.3(f)) are such imperatives. Rules 5.4(a) and 7.3(f) are explicit judicial declarations of Indiana public policy and, akin to contravening a statute, agreements in violation of these rules are unenforceable. *See Straub*,

---

**3.** By this we mean that the court must consider what the Restatement (Second) of Contracts terms "the strength of that policy as manifested by legislation or judicial decisions." Restatement (Second) of Contracts § 178(3)(a) (1979). Because there is no explicit legislative, judicial, or constitutional prohibition, the court must consider the implicit declarations of public policy manifested by the declarations that do exist. The Restatement (Second) of Contracts § 178 contains a balancing test that is similar to our five point balancing test.

**4.** The Court of Appeals, in holding that a referral fee agreement is not unenforceable as a matter of law, found that the Rules of Professional Con-

duct lack the force and effect of statute or case law and, therefore, they cannot be looked to for public policy. *Trotter*, 657 N.E.2d at 428–29. We disagree. While it may be true that the Rules are not the same as case law or statutes, *see* Ind.Rules of Professional Conduct Preamble, Scope (noting that a violation of the Rules cannot be used as a basis for civil liability); *see also Kizer v. Davis*, 174 Ind.App. 559, 369 N.E.2d 439 (1977) (cited by the Court of Appeals to support its ruling), this does not necessarily mean that they evince no public policy, *see Straub v. B.M.T. by Todd*, 645 N.E.2d 597 (Ind.1994); *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338 (Ind.1991).

645 N.E.2d at 599; *see also Franklin Fire Ins. Co.*, 58 N.E.2d at 950.

## II. Indiana Rules of Professional Conduct 7.3(f)

■ As noted above, Trotter argues that the alleged agreement is a referral fee agreement, that it is in violation of Conduct Rule 7.3(f), and that it is unenforceable. We agree. Conduct Rule 7.3(f) states in pertinent part that "A lawyer *shall not* compensate or give anything of value to a person or organization to recommend or secure his employment by a client, or as a reward for having made a recommendation resulting in his employment by a client ..." Ind.Professional Conduct Rule 7.3(f) (emphasis added). This Rule states the public policy against paying fees in return for referring clients. Referral fees are disfavored because of their potential effect on the client. *See* Model Code of Professional Responsibility EC 2–8 (1986); *O'Hara v. Ahlgren, Blumenfeld and Kempster*, 127 Ill.2d 333, 130 Ill.Dec. 401, 405, 537 N.E.2d 730, 734 (1989); *Matter of Frey*, 475 N.E.2d 688, 690 (Ind.1985); *Linnick v. State Bar*, 62 Cal.2d 17, 41 Cal.Rptr. 1, 3–4, 396 P.2d 33, 35 (1964). Specifically, the client's choice of an attorney should "result from a free and informed choice by the client," *Frey*, 475 N.E.2d at 690, and any recommendation should originate from a disinterested source. Model Code of Professional Responsibility EC 2–8. Furthermore, when a nonlawyer has a monetary interest in referring cases to an attorney, then it is the referrer's and not the client's best interests that are being considered. *O'Hara*, 130 Ill. Dec. at 405, 537 N.E.2d at 734; *Linnick*, 41 Cal.Rptr. at 3–4, 396 P.2d at 35. Thus, any agreement between an attorney and a layman for the payment of referral fees, that is not otherwise authorized by the Rules of Professional Conduct, is unenforceable in Indiana.[5]

The agreement, as alleged by Nelson, would pay to her five percent of resulting fees in certain cases referred to Trotter by Nelson. Thus, Nelson would be rewarded for having made a recommendation resulting in Trotter's employment by a client. Any such agreement violates Rule 7.3(f) and would be unenforceable.

## III. Indiana Rules of Professional Conduct 5.4(a)(3)

Nelson, at trial and in her brief in opposition to transfer, argues that the alleged agreement does not fall under Rule 7.3(f); rather, she argues that the agreement does not contravene the Rules of Professional Conduct because the agreement is permitted by Rule 5.4(a)(3). Rule 5.4(a)(3) states that "a lawyer or law firm *shall not* share legal fees with a nonlawyer, except that: ... (3) a lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement." (emphasis added). Nelson concludes that her alleged agreement was a permissible "profit-sharing compensation plan."

■ We disagree both with Nelson's characterization of the alleged agreement and with her argument. Just as with the Rule against referral fees, Rule 5.4(a) also explicitly prohibits certain attorney action. Rule 5.4(a) prohibits an attorney from sharing legal fees with a nonlawyer. This Rule states the public policy against fee-splitting with a nonlawyer. Again, similar to Rule 7.3(f), fee-splitting with a nonlawyer is disfavored because of its potential affect on the client-attorney relationship. *See O'Hara*, 130 Ill. Dec. at 405, 537 N.E.2d at 734; *In re Conduct of Griffith*, 304 Or. 575, 748 P.2d 86, 109 (1987); Prof.Cond.R. 5.4, comment; Charles W. Wolfram, Modern Legal Ethics 509 (1986); C. Randal Johnson, Comment, *Fee Splitting with a Nonlawyer*, 12 J.Legal Prof. 139, 143 (1987). For example, fee-splitting with a nonlawyer provides the incentive for a nonlawyer to recommend an attorney's services for their own pecuniary interests rather than the client's legal best interests. *O'Hara*, 130 Ill.Dec. at 405, 537 N.E.2d at 734. Furthermore, fee-splitting provides a potential disincentive to the attorney to devote their full time and energy to the client, as the attorney must share fees with another who has done little to earn it. *Id.;* Wolfram at 509. Finally, fee-splitting might interfere

---

**5.** Our ruling today does not address the issue of attorneys referring clients to one another.

with the attorney's "professional independence of judgment." Prof.Cond.R. 5.4, comment; *see also* Johnson at 145. Thus, in general, fee-splitting agreements with a nonlawyer are contrary to Indiana public policy and unenforceable.[6]

As Nelson rightly notes, however, Rule 5.4(a) does permit the sharing of legal fees with a nonlawyer under certain enumerated exceptions. Nelson argues that the alleged agreement is in fact a permissible profit-sharing compensation plan under Rule 5.4(a)(3). We disagree. The type of fee sharing which Rule 5.4(a)(3) allows is not what Nelson is alleging in the case at bar. For the above stated reasons, a profit-sharing plan with a nonlawyer may not be tied to the receipt of a particular legal fee. However, an attorney may fashion a profit-sharing plan for his or her nonlawyer employees so long as the measure of compensation "relates to the net profits and business performance of the firm, and not to the receipt of particular fees." ABA Comm. On Ethics and Professional Responsibility, Informal Op. 1440 (1979); *see also Matter of Anonymous Member of South Carolina Bar*, 295 S.C. 25, 367 S.E.2d 17, 18 (1988). Nelson is attempting to escape the reach of the Rules simply by re-characterizing as a profit-sharing plan what is clearly a referral fee agreement. The alleged agreement, as Nelson herself describes it, ties her "bonus" to "certain personal injury cases directed by or through her" to Trotter. (R. at 32.) Furthermore, even if Nelson's compensation were not tied to referrals, the compensation relates to the "receipt of particular fees" and is not made enforceable by Rule 5.4(a)(3). The agreement as alleged by Nelson is not based upon a percentage of the overall profits of the law office, nor is it intended to provide an incentive and reward for input which led to the greater overall efficiency and productivity of the law office. These are elements that are necessary for a profit-sharing plan to be

permissible under Rule 5.4(a)(3). *See* ABA Informal Op. 1440. Instead, the alleged agreement links payment to the referral of clients by a nonlawyer and provides incentive to engage in the very activity which Rules 5.4(a) and 7.3(f) were enacted to guard against.

### IV. Disposition

To the extent that Nelson's claims for remuneration rely upon the enforcement of the alleged agreement, we instruct the trial court to grant Trotter's motion for partial summary judgement. We do this despite the fact that, if Nelson is correct, Trotter has committed a gross violation of the Conduct Rules and would have essentially entered into a contract which he knew to be unenforceable and now seeks to escape. Nevertheless, when a court determines that a contract must be declared void as against public policy, it does so on the grounds that the good of the public as a whole must take precedence over the circumstances of the individual, no matter the hardship or inequities that may result. *See O'Hara*, 130 Ill. Dec. at 408, 537 N.E.2d at 737; *Pipe Creek School Tp. v. Hawkins*, 49 Ind.App. 595, 599, 97 N.E. 936 (1912); Restatement (Second) of Contracts Ch. 8, Introductory Note (1979). We note in closing that Nelson is not entirely precluded from being remunerated for the work she believes she has done; she is precluded only to the extent that she relies upon the enforceability of the alleged referral fee agreement.[7]

### CONCLUSION

We vacate the Court of Appeals opinion and remand this case to the trial court for further proceedings in accord with this opinion.

SHEPARD, C.J., and DICKSON and BOEHM, JJ., concur.

SULLIVAN, J., concurs and dissents with separate opinion.

---

6. Fee-splitting between attorneys is permissible in certain situations under Rule 1.5(e).

7. The Court of Appeals stated that "invalidation of this contract harms the public by denying Nelson, a non-lawyer, the benefit of her bargain." *Trotter*, 657 N.E.2d at 429. If by our

ruling we were to preclude her from raising any claim for money that is indeed owed her, then the Court of Appeals might be right. However, we are only holding that, to the extent Nelson relies upon the enforcement of the referral fee agreement, she cannot win.

**1156**

SULLIVAN, Justice, concurring and dissenting.

I respectfully dissent from the majority's conclusion that the trial court erred in denying summary judgment in this case.

I do not agree that the alleged agreement here is unenforceable under applicable precedent. I do agree with the majority that our Rules of Professional Conduct are the equivalent of statutes in our constitutional sphere and, as such, constitute public policy. I likewise agree that agreements which contravene our Rules are tantamount to "agreements that contravene statute" under *Continental Basketball Ass'n, Inc. v. Ellenstein Enters., Inc.*, 669 N.E.2d 134, 139 (Ind.1996). However, *Continental Basketball* provides the following guidance in determining whether an agreement contravenes statute:

> [B]ecause we value the freedom to contract so highly, we will not find that a contract contravenes a statute unless the language of the implicated statute is so clear and unambiguous that the legislature intended that the courts not be available for either party to enforce a bargain made in violation thereof.

*Id.* at 140. Neither of the Rules of Professional Conduct implicated here give any indication that the courts are not available to enforce such bargains.

Rather, I would find that the alleged agreement here falls within another category of contracts discussed by the majority, "agreements that are otherwise contrary to the declared public policy of Indiana." Majority Op. at 1153 (citing *Continental Basketball Ass'n*, 669 N.E.2d at 139). As the majority points out, the inquiry under this category requires the balancing of five factors. *Id.* Without belaboring the analysis, I would find that, to the extent Trotter committed himself financially to Nelson, this balancing of factors does not relieve him of his obligation to her. More generally, the purposes of the Rules of Professional Conduct at issue here are to protect the lawyer's professional judgment, Ind.Professional Conduct Rule 5.4; and to protect the process of informed selection of a lawyer by potential consumers of legal services, Prof.Cond.R. 7.3. Absolving Trotter of any obligation that

he has to Nelson under the alleged agreement does not further either of these purposes.

I do concur with the majority to the extent that it finds that summary judgment on this issue does not preclude Nelson from pursuing Trotter on one or more other legal theories. Majority Op. at 1155 & n. 7.