Dean Abbott, Plaintiff-Appellant,†

v.

Howard Marker, Defendant-Respondent.

Court of Appeals

*No. 2005AP2853. Submitted on briefs June 26, 2006.
—Decided July 18, 2006.*

2006 WI App 174

(Also reported in 722 N.W.2d 162.)

† Petition to review denied 10/10/06.

637

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Steven B. Goff* and *Tracy N. Tool* of *Bye, Goff & Rohde, Ltd.* of River Falls.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Joel L. Aberg* and *Thomas J. Misfeldt* of *Weld, Riley, Prenn & Ricci, S.C.* of Eau Claire.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Dean Abbott appeals a judgment dismissing his claims against attorney Howard Marker. Abbott contends an agreement he had with Marker for client referrals was enforceable. We disagree and affirm.

## Background

¶ 2. Initially, Marker represented Abbott in a medical malpractice claim with Marker successfully settling the suit for $570,000. Abbott and Marker allegedly entered into an arrangement where Abbott would refer potential clients to Marker.[1] If Marker favorably concluded the cases, Abbott would allegedly receive 25% of any attorney fees Marker collected. Abbott proceeded to refer two cases to Marker, for which Marker paid Abbott pursuant to their agreement.

¶ 3. Subsequently, Abbott referred a case involving the Richardson family. The Richardson case resulted in a recovery of $4 million, including $1.6 million in attorney fees. This amount was much higher than any previous referrals from Abbott, and Marker refused to pay Abbott a percentage of the attorney fees. For the first time, Marker told Abbott it was unethical for him to pay for a referral.

¶ 4. Abbott filed suit against Marker. Abbott made claims of breach of contract and quasi-contract. Marker filed a motion to dismiss. The court dismissed Abbott's promissory estoppel claim. Abbott then amended his complaint to include a legal malpractice claim, and Marker then moved for summary judgment on the remaining claims. After the reconsideration of an earlier motion to dismiss, the circuit court dismissed Abbott's claims, stating that his claims were barred by Wis. Stat. §§ 757.295 and 757.45.[2]

---

[1] Although the existence of an agreement is disputed, for this opinion we assume it did exist.

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

## Standard of Review

¶ 5. We review a circuit court's grant of a motion to dismiss for failure to state a claim without deference. *See Watts v. Watts*, 137 Wis. 2d 506, 512, 405 N.W.2d 305 (1987). We evaluate whether the allegations in the complaint, taken as true, are legally sufficient to state a claim for relief. *Id.* The interpretation of a statute is a question of law that we also review without deference. *Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶ 17, 245 Wis. 2d 560, 630 N.W.2d 517.

## Discussion

¶ 6. The sole issue is whether the agreement between Marker and Abbott is enforceable, either as a contract or quasi-contract. In Wisconsin, an agreement to compensate a non-lawyer for a client referral to a lawyer is barred by statute. *See* WIS. STAT. §§ 757.295 and 757.45. Generally, contractual provisions agreed to by competent parties are valid and enforceable assuming they do not violate statute or public policy. *See Kocinski v. Home Ins. Co.*, 147 Wis. 2d 728, 752, 433 N.W.2d 654 (Ct. App. 1988), *aff'd as modified,* 154 Wis. 2d 56, 452 N.W.2d 360 (1990). A contract is considered illegal when its formation or performance is forbidden by civil or criminal statute or where a penalty is imposed for the action agreed to. *Hiltpold v. T-Shirts Plus, Inc.*, 98 Wis. 2d 711, 716–17, 298 N.W.2d 217 (Ct. App. 1980). A court generally will not aid an illegal agreement, whether executed or executory, but instead leave the parties where it found them. *Venisek v. Draski*, 35 Wis. 2d 38, 50, 150 N.W.2d 347 (1967). However, Wisconsin courts generally seek to enforce

contracts rather than set them aside. *See Dawson v. Goldammer*, 2003 WI App 3, ¶ 6, 259 Wis. 2d 664, 657 N.W.2d 432.

¶ 7. WISCONSIN STAT. § 757.295 states, in pertinent part:

> **(1)** SOLICITING LEGAL BUSINESS. Except as provided under SCR 20:7.1 to 20:7.5, no person may solicit legal matters or a retainer, written or oral, or any agreement authorizing an attorney to perform or render legal services.
>
> **(2)** SOLICITATION OF A RETAINER FOR AN ATTORNEY. Except as provided under SCR 20:7.1 to 20:7.5, no person may communicate directly or indirectly with any attorney or person acting in the attorney's behalf for the purpose of aiding, assisting or abetting the attorney in the solicitation of legal matters or the procurement through solicitation of a retainer, written or oral, or any agreement authorizing the attorney to perform or render legal services.

Thus, under this statute, it is illegal for a party to solicit retainers or agreements from another party for an attorney.

¶ 8. WISCONSIN STAT. § 757.45, entitled "Sharing of compensation by attorneys prohibited," states in pertinent part:

> It is unlawful for any person to divide with or receive from, or to agree to divide with or receive from, any attorney or group of attorneys, whether practicing in this state or elsewhere, either before or after action brought, and portion of any fee or compensation, charged or received by such attorney or any valuable consideration or reward, as an inducement for placing or in consideration of having placed, in the hands of such attorney, or in the hands of another person, a claim or demand of any kind for the purpose of collect-

ing such claim, or bringing an action thereon, or of representing claimant in the pursuit of any civil remedy for the recovery thereof . . . .

Under this statute, then, it is illegal for an attorney to split legal fees with non-attorneys.

¶ 9. Applying these two statutes, the agreement between Marker and Abbott was illegal. Abbott was soliciting clients for Marker in violation of Wis. Stat. § 757.295. Payment of 25% of Marker's attorney fee would violate Wis. Stat. § 757.45. Therefore, requiring Marker to pay Abbott for the Richardson case would violate Wisconsin's prohibition of court enforcement of illegal contracts, and we decline Abbott's invitation to ignore this prohibition.

¶ 10. Though no Wisconsin cases interpret Wis. Stat. §§ 757.295 and 757.45, an Indiana case, with similar facts, discusses the public policy implications upon paid lawyer referrals. In *Trotter v. Nelson*, 684 N.E.2d 1150, 1151 (Ind. 1997), Trotter was a licensed attorney, and Nelson was a former employee of Trotter. *Id.* at 1151. Nelson, who was not an attorney, alleged that she and Trotter had an agreement where she received a percentage of any attorney fees for any personal injury or worker's compensation case she referred to Trotter. *Id.* at 1151–52. Nelson initiated a suit, claiming that Trotter had not fully compensated her per the terms of the agreement. *Id.* at 1152. Trotter contended that no agreement existed, and even if one did, it was unenforceable because it would be against public policy. *Id.*

¶ 11. The Indiana Supreme Court noted that there are three situations where Indiana's courts have refused to enforce private agreements on public policy grounds, including if the agreement: (1) contravenes a

statute; (2) injures the public in some way; or (3) is otherwise contrary to the declared public policy. *Id.* at 1153. If a contract directly contravenes a statute, then the court must declare the contract void. *Id.* However, if an agreement might be otherwise contrary to declared public policy, the Indiana Supreme Court set forth five relevant factors to consider: (1) the nature of the subject matter of the agreement; (2) the strength of the public policy underlying the statute; (3) the likelihood the refusal to enforce the bargain will further the applicable public policy; (4) how "serious or deserved" is the forfeiture suffered by the party attempting to enforce the bargain; and (5) the parties' relative bargaining power and freedom to contract. *Id.*

¶ 12. The Indiana court concluded:

> To the extent that Nelson's claims for remuneration rely upon the enforcement of the alleged agreement, we instruct the trial court to grant Trotter's motion for partial summary judgement. We do this despite the fact that, if Nelson is correct, Trotter has committed a gross violation of the [Attorney] Conduct Rules and would have essentially entered into a contract which he knew to be unenforceable and now seeks to escape. Nevertheless, when a court determines that a contract must be declared void as against public policy, it does so on the grounds that the good of the public as a whole must take precedence over the circumstances of the individual, no matter the hardship or inequities that may result.

*Id.* at 1155. The court held that the referral agreement alleged by Nelson was void and unenforceable because it was directly contrary to the Indiana Rules of Professional Conduct, akin to contravening a statute, and against public policy.

¶ 13. Although the fact that the agreement between Marker and Abbott is directly contrary to statute is reason enough for us to decline to enforce the contract as a matter of law, it is also unenforceable on public policy grounds. It is implicitly declared in Wisconsin, through Wis. Stat. §§ 757.295 and 757.45, that referral agreements between an attorney and a non-attorney are contrary to public policy. Thus, like the agreement in *Trotter*, the agreement between Marker and Abbott is unenforceable.

¶ 14. Abbott argues, however, that a party to an otherwise illegal contract may recover in contract or quasi-contract if the parties are not in pari delicto.[3] Abbott contends that he and Marker cannot be in pari delicto because Marker was an attorney with superior training and legal knowledge. Thus, Abbott contends, the court must enforce the illegal referral agreement.

¶ 15. In pari delicto applies the legal principle that no court shall aid a party whose claim is based on an illegal or immoral act. *Evans v. Cameron*, 121 Wis. 2d 421, 427, 360 N.W.2d 25 (1985). However, in pari delicto is not without restriction:

> And indeed in cases where both parties are *in delicto* concurring in an illegal act, it does not always follow that they stand *in pari delicto*, for there may be, and often are, very different degrees in their guilt. One party may act under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age; so that his guilt may be far less in degree than that of his associate in the offense. And

---

[3] "Equally at fault." Black's Law Dictionary 806 (8th ed. 2004).

besides, there may be on the part of the court itself a necessity of supporting the public interests or public policy in many cases, however, reprehensible the acts of the parties may be.

*Id.* (citation omitted).

¶ 16. To support his argument that because he is a non-lawyer he should be held less accountable than Marker, Abbott relies heavily on *Evans*. Evans sued her former attorney Cameron for improper legal advice. *Id.* at 424–25. Evans claimed Cameron advised her to lie under oath in a bankruptcy proceeding, and those lies caused her various damages. *Id.* Cameron filed a motion to dismiss, which was granted on the grounds of in pari delicto. The court of appeals reversed the circuit court. *Id.* at 425–26.

¶ 17. The Wisconsin Supreme Court reversed the court of appeals and dismissed Evans's claim. With an attorney-client relationship, the supreme court concluded:

> There may be circumstances in which the advice given by an attorney is so complex that the client would be unaware of the wrongfulness involved in following that advice. In such circumstances, more weight may be given to the influence an attorney will have over the client and the amount of reliance which the client can justifiably place in the attorney. The wrongfulness of lying while under oath, however, is apparent. Absent some allegation of special circumstances constituting an exception to the rule of *in pari delicto* independent of the attorney-client relationship, the client's deliberate act of lying under oath places that client *in pari delicto* with the attorney who advised that client to lie.

*Id.* at 428. Thus, in certain circumstances, advice given by an attorney might be so complex that a client cannot be expected to be aware of the potential impact.

¶ 18. Abbott's reliance on Marker's superior legal knowledge is misplaced. First, unlike in *Evans,* we note that Marker was not acting as Abbott's attorney. It would be improper to impose the unique relationship of attorney-client upon the arrangement between Marker and Abbott. *See State v. Meeks,* 2003 WI 104, ¶ 59, 263 Wis. 2d 794, 666 N.W.2d 859 ("Policy considerations play a fundamental role in protecting the very important relationship between attorney and client. The attorney-client privilege provides sanctuary to protect a relationship based upon trust and confidence."). Further, this situation is not so complex that we should ignore the statutes barring the type of agreement here. Every person in Wisconsin is presumed to know the law, and ignorance of it does not excuse unlawful behavior. *See Tri-State Mech., Inc. v. Northland College,* 2004 WI App 100, ¶ 10, 273 Wis. 2d 471, 681 N.W.2d 302. Despite Abbott's arguments to the contrary, compliance with the clearly written provisions of WIS. STAT. §§ 757.295 and 757.45 is not something we can only expect of lawyers.

¶ 19. Although Marker disputes having made this referral arrangement with Abbott, if true, Marker has taken an unfair advantage of Abbott and violated his obligations under the statutes and professional ethics. However, to enforce the illegal agreement, we would in effect be nullifying Wisconsin's public policy and statutes prohibiting the sharing of attorney fees with non-attorneys in referral practices.

¶ 20. Next, Abbott contends that he should be awarded a portion of the attorney fees on unjust enrichment grounds. Unjust enrichment is an equitable doctrine. *CleanSoils Wisconsin, Inc. v. DOT,* 229 Wis. 2d 600, 612, 599 N.W.2d 903 (Ct. App. 1999). A circuit

court's decision to grant relief due to unjust enrichment is discretionary. *Ulrich v. Zemke*, 2002 WI App 246, ¶ 8, 258 Wis. 2d 180, 654 N.W.2d 458. A plaintiff may recover through quasi-contract unjust enrichment when the plaintiff confers a benefit on the defendant, the defendant is aware of the benefit, and the retention of the benefit would be inequitable. *Halverson v. River Falls Youth Hockey Ass'n*, 226 Wis. 2d 105, 115, 593 N.W.2d 895 (Ct. App. 1999). Unjust enrichment is grounded upon the moral principle that a party who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust. *See Management Comp. Servs. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 188, 557 N.W.2d 67 (1996).

¶ 21. First, we choose not to enforce an agreement through unjust enrichment when the party cannot enforce the agreement through contract because it is illegal. Second, Marker has not received a benefit from Abbott which requires him to make restitution. Abbott provided Marker with a client referral. WISCONSIN STAT. §§ 757.295 and 757.45 make it illegal for an attorney to receive a referral through paying a third party. Thus, Marker has not received a benefit that has a marketable value.

*By the Court.*—Judgment affirmed.