Agnes , Peter W., J.
1. This is a civil action in which the Plaintiff, Richard J. Roberge seeks a Preliminary Injunction against the defendant, Matthew J. Burkinshaw based on the terms of a contract entitled “Amended Compensation Agreement.” (Agreement.) The agreement relates to efforts to be made by the plaintiff to refer clients to the defendant. The relief sought by the plaintiff is an order requiring the defendant to place revenue earned in his law practice in escrow to pay any judgment that plaintiff might obtain and preventing the defendant from transferring assets from a professional corporation he controls (Burkinshaw Law Offices, P.C.). The Agreement is attached to the plaintiffs Verified Complaint as exhibit A.
2.The defendant is an attorney licensed to practice law in Massachusetts and experienced in the area of commercial and retail debt collection law. The plaintiff is not an attorney, but has operated a debt collection business in the past. The Agreement is dated September 1, 2003 and represents an amendment to an original agreement dated September 1, 2002. The plaintiffs claim is that on January 2, 2007, he exercised his right to voluntarily terminate his agreement with the defendant, and, as a result, triggered the “buy-out” provision of the Agreement. The buy-out provision, Agreement, paragraph 5, provides that the “buy-out Amount” is $600,000 as of September 1, 2003 and that it increases by $50,000 per month beginning on October 1, 2003 until the agreement is terminated. Furthermore, this provision states that the buy-out amount will be capped at an amount not to exceed four times the gross revenues of the firm during the 365 days preceding the agreement. It also provides that the “buy-out” will be paid in the form of Sales Commissions earned by the plaintiff “on fees received from clients of the Firm ...”
3. An examination of the Agreement as a whole raises serious questions about its legality in light of Rule 5.4(a) of the Rules of Professional Conduct, found in Rule 3:07 of the Rules of the Supreme Judicial Court. Rule 5.4(a) provides, in part, that “A lawyer or law firm shall not share legal fees with a nonlawyer, except that: ... (3) a lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement . . .” In response to questions raised by this court at oral argument, the plaintiff maintains that the Agreement is simply a “compensation” agreement drafted by a lawyer (the defendant) and governing client attraction services to be performed by the plaintiff for the defendant lawyer which is permitted by Rule 5.4(a)(3). However, on closer inspection the Agreement has fee-splitting characteristics that raise serious questions about its lawfulness in view of Rule 5.4(a). For example, apart from the buy-out provision, in paragraph 2(b) of the Agreement, there is a provision regarding “Sales Commissions” that is based on “a percentage of gross fees.” In that same paragraph it provides that if the plaintiff is solely responsible for bringing a client to the defendant he would be paid a “Relationship Maintenance Fee [instead of a “Sales Commission”] equal to 10% of fees earned by the firm from said client.”
4. The plain terms of the Agreement establish a direct tie between plaintiffs compensation and the fees earned by the defendant. Rule 5.4(a) forbids a lawyer from sharing legal fees with a non-lawyer unless it is part of a “compensation or retirement plan.” The Agreement before the court, read in its entirety, more closely resembles a prohibited fee-splitting arrangement than a permissible compensation agreement. See Trotter v. Nelson, 684 N.E.2d 1150, 1155 (1997), quoting ABA Committee on Ethics and Professional Responsibility, Informal Opinion 1440 (1979) (observing that the rule of professional conduct at issue in this case requires that the compensation paid by a lawyer to a non-lawyer “relates to the net profits and business performance of the firm, and not to the receipt of particular fees"). The plaintiff argues that it is only the “buy-out” provision that is at stake here. *596 However, if the Agreement is unlawful as a violation of Rule 5.4(a), enforcement of the buy-out provision would be contrary to public policy.
5. For purposes of the question before the court it is only necessary to go as far as to say that the plaintiff has not established sufficient grounds for the invocation of this court’s power of equity. In deciding whether to grant a preliminary injunction, the court is required to perform a multi-part analysis. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 606, 616-17 (1980). Initially, the court must determine whether the moving party has demonstrated a likelihood of success on the merits, and that it faces a substantial risk of irreparable harmlosses that cannot be repaired or for which compensation will not be adequate after final judgmentif the motion for the preliminary injunction is not granted. Id. at 617 & n.11. Here, the plaintiff has failed on both grounds. Apart from the issues discussed above reláting to the likelihood of success, the plaintiff has not established that without the relief he requests he will suffer irreparable harm. A claim that can be satisfied by the payment of money damages after judgment does not usually qualify as irreparable harm warranting equitable relief See Westinghouse Broadcasting Co. v. New England Patriots, 10 Mass.App.Ct. 70, 74-75 (1980).

ORDER

For the above reasons, the motion for a Preliminary Injunction is DENIED.