Stanley N. JEZESKI, Plaintiff-Appellant,

v.

Thomas P. JEZESKI, Defendant-Respondent.

Court of Appeals

*No. 2007AP2823. Submitted on briefs September 29, 2008.
—Decided December 23, 2008.*

2009 WI App 8

(Also reported in 763 N.W.2d 176.)

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *James D. Peebles* of *Selsing Law Office*, Berlin.

No brief was filed by respondent.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. ANDERSON, P.J. Stanley N. Jezeski did not want a twenty-acre parcel of land to be part of the marital estate during his divorce from Rosalie A. Jezeski; so, he concocted a plan to transfer the parcel to his brother, Thomas P. Jezeski. The plan was spelled out in a contract signed by both brothers in which Thomas promised to transfer the parcel back to Stanley after the divorce was finalized. When Stanley and Rosalie were divorced, Thomas refused to transfer the parcel back to Stanley, and Stanley brought a breach of contract action. After a bench trial, the trial court held that the contract was an attempt to defraud Rosalie and the family court that presided over the Jezeski divorce, and dismissed Stanley's breach of contract action. Stanley appeals.[1] We agree with the trial court that Stanley's hiding of a

---

[1] Thomas, the respondent, did not file a brief. The failure to file a responsive brief may be the basis to summarily reverse the order of the circuit court. *See* WIS. STAT. RULE 809.83(2)

significant asset from the family court constitutes a fraud upon the court and affirm.

¶ 2.   On March 26, 1998, Bernice H. Jezeski, the mother of Stanley and Thomas,[2] transferred to Stanley, in his sole name, a twenty-acre parcel of land in the Town of Princeton, Green Lake County. At the time of the transfer, Stanley was married to Rosalie, but that marriage was destined to fail. Planning ahead, on July 28, 2004, Stanley and Thomas entered into a contract in which Stanley transferred the parcel to Thomas by quit claim deed and it included the following terms:

> [Thomas would own the parcel] temporarily, until such time as [Stanley's] divorce from Rosalie A. Jezeski becomes finalized. Once Stanley N. Jezeski and Rosalie A. Jezeski's divorce becomes finalized, I Thomas P. Jezeski do hereby agree to transfer the [parcel], back to my brother, Stanley N. Jezeski permanently. While awaiting this finalization of divorce, Stanley N. Jezeski will hereby assume all responsibility for payment of all property taxes on the above described property and also become permanent caretacker [sic] of the above described land with legal jurisdiction over it. (Underlining in original.)

---

(2005–06). By counsel, Thomas advised us on April 21, 2008, that he elected not to file a responsive brief, and he moved to have the appeal dismissed as being frivolous. Thomas was then notified by an order dated April 25, 2008, that the appeal could be summarily reversed if he failed to file a brief. Nevertheless, we opt not to summarily reverse because it would sanction a fraud upon the court. We decline to find the appeal frivolous because Thomas did not properly brief his request.

All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] There is a third brother, Daniel J. Jezeski, who is not a party to this action.

¶ 3. It was almost two years before Stanley filed, pro se, for divorce from Rosalie on April 20, 2006. The case proceeded swiftly and a divorce was granted on September 11, 2006. The findings of fact in the divorce action included:

> 8. The parties assets, their interests therein, the values thereof, and their encumbrances and debts are found to be set forth in the parties financial disclosure forms which were updated as required by statute on the record marked as exhibits at the time of trial and are on file herein.

¶ 4. The divorce judgment incorporated the parties' marital settlement agreement. The marital settlement agreement recited that the parties did not own any real estate, either jointly or in their sole names, and awarded to each party the personal property in his or her possession and the debts in his or her name.

¶ 5. After the divorce, Stanley demanded that Thomas transfer the parcel back to him, Thomas refused unless Stanley granted their brother Daniel and Thomas unrestricted access to the parcel and provided for Daniel and Thomas to assume ownership upon Stanley's death. Stanley responded with this breach of contract action.

¶ 6. After a short bench trial, the court made an oral ruling. The court started by commenting that after reviewing the file, it was suspicious of Stanley's motives because the contract referred to a potential divorce between Stanley and his spouse. The court found that the divorce judgment "shows no real estate owned by either party and division of other assets and debts . . . ." The court discussed possible reasons for keeping the parcel out of the marital estate and found "that the purpose of the transfer on a temporary basis to Thomas

182

was to avoid consideration of this property in the divorce proceeding." Based upon this finding the court concluded:

> Now, given that, the question is whether it's appropriate for me to grant relief to Stanley with that background. And I'm not going to do it. I am not going to enforce a contract that I think was intended to protect real estate from Mrs. Jezeski and/or creditors. And, actually, I'm not sure that it makes too much difference because the purpose was to hide assets. And I know that Mr.—that Stanley was not represented by counsel; and that probably wasn't a very good choice to proceed in that fashion.
>
> But I think it is totally inappropriate for me to undue [sic] or grant relief to someone who acted in this fashion, as I have found. So I'm denying relief requested by the plaintiff and dismissing the action.

¶ 7.   Stanley makes two arguments on appeal. First, he contends that the contract was unambiguous and enforceable because the parcel was gifted property and would have been excluded from the marital estate under WIS. STAT. § 767.61(2)(a)1. if he had revealed his ownership interest in the parcel. He reasons that because the property would have been excluded from the marital estate, no fraud was committed. Second, he argues that if the contract was a fraudulent transfer or conveyance, the trial court should have declared the contract void and returned the parcel to Stanley.

■■
¶ 8.   If Stanley is challenging the trial court's finding that he entered into the contract with Thomas to avoid consideration of the parcel by the family court, we give deference to the findings because of the superior opportunity of the trial court to observe the de-

meanor of witnesses and to gauge the persuasiveness of their testimony. *Kleinstick v. Daleiden*, 71 Wis. 2d 432, 442, 238 N.W.2d 714 (1976). It is the fact finder's function to resolve any conflicts or inconsistencies in the evidence and to judge the credibility of the evidence, *State v. Pankow*, 144 Wis. 2d 23, 30–31, 422 N.W.2d 913 (Ct. App. 1988), and the fact finder may believe some of the testimony of one witness and some of the testimony of another witness even though their testimonies, read as a whole, may be inconsistent, *State v. Toy*, 125 Wis. 2d 216, 222, 371 N.W.2d 386 (Ct. App. 1985). Unless the testimony is inherently incredible, an appellate court may not substitute its judgment for that of the fact finder. *State v. Saunders*, 196 Wis. 2d 45, 54, 538 N.W.2d 546 (Ct. App. 1995).

¶ 9.   The contract itself establishes that Stanley wanted to keep the parcel out of the potential reach of the family court. The contract recites that the sole purpose is so Thomas can temporarily own the parcel "until such time as [Stanley's] *divorce* from Rosalie A. Jezeski becomes finalized. Once Stanley N. Jezeski and Rosalie A. Jezeski's *divorce* becomes finalized, I Thomas P. Jezeski do hereby agree to transfer the [parcel], back [to Stanley]." (Emphasis added.)

¶ 10.   At issue is whether a contract entered into to hide a substantial asset from a spouse and the family court during a divorce is enforceable. Determining whether this contract is enforceable is a question of law that we review de novo. *See Heyde Cos., Inc. v. Dove Healthcare, LLC*, 2002 WI 131, ¶ 9, 258 Wis. 2d 28, 654 N.W.2d 830 (determining whether a no-hire provision of a contract is enforceable is a question of law).

¶ 11.   The preference in Wisconsin is to enforce contracts agreed to by competent and intelligent par-

ties. *Abbott v. Marker*, 2006 WI App 174, ¶ 6, 295 Wis. 2d 636, 722 N.W. 2d 162. However, if a contract violates a statute, a rule of law or public policy, courts will not enforce the contract. *See id.* "A contract is considered illegal when its formation or performance is forbidden by civil or criminal statute or where a penalty is imposed for the action agreed to." *Id.* A court can only refuse to enforce a contract where it has no doubt that it violates a statute, a rule of law or public policy. *See Northern States Power Co. v. National Gas Co., Inc.*, 2000 WI App 30, ¶ 8, 232 Wis. 2d 541, 606 N.W.2d 613.

¶ 12.   Stanley's "no harm, no foul" argument—the parcel was gifted property that is not included in the marital estate so no one was harmed by this contract—is wide of the mark. Each party in a divorce has a statutory obligation to disclose all assets, no matter how acquired. WISCONSIN STAT. § 767.127(1) provides, in part, explicit directions on what a party must disclose:

> REQUIRED DISCLOSURE. In an action affecting the family the court shall require each party to furnish *full disclosure of all assets owned* in full or in part by either party separately or by the parties jointly. Disclosure may be made by each party individually or by the parties jointly. *Assets required to be disclosed include,* but are not be [sic] limited to, *real estate.* The court shall also require each party to furnish, on the same standard form, information pertaining to all debts and liabilities of the parties. *The form used shall contain a statement in conspicuous print that complete disclosure of assets and debts is required by law and deliberate failure to provide complete disclosure constitutes perjury.* (Emphasis added.)

¶ 13.   Stanley is partially correct that under WIS. STAT. § 767.61(2)(a)1. gifted property is not subject to

division. However, that is not a hard and fast rule; inherited or gifted property may be divided if the court finds that refusal to do so will create a hardship on the other party. *See* § 767.61(2)(b). It was not Stanley's job to unilaterally decide not to disclose this parcel because he believed it was not subject to division. While we will not speculate on what the family court might have done if it had been aware of the parcel, we will note that the parties had few assets and a large number of debts.

¶ 14.  The contract aided Stanley in secreting the parcel from Rosalie and the family court, when he had a statutory obligation to disclose all of his assets. In fact, a specific penalty is provided for the failure to make a full disclosure. WISCONSIN STAT. § 767.127(1) instructs that the "deliberate failure to provide complete disclosure constitutes perjury." The contract is invalid and unenforceable because it assists Stanley in violating a civil statute to which a penalty is attached. *See Abbott*, 295 Wis. 2d 636, ¶ 6.

¶ 15.  Wisconsin courts have historically refused to enforce contracts that violate a statute, a rule of law or public policy or abuse the judicial process. In 1847, a New York resident, Oatley, obtained a criminal indictment against a Wisconsin resident, Fay, charging him with obtaining property under false pretenses after Fay's business failed and he could not pay a business debt. *Fay v. Oatley*, 6 Wis. 42, [*45], 56–57, [*53–54] (1857). Oatley came to Wisconsin with a representative of the Governor of New York and the requisite paperwork to extradite Fay. *Id.* Oatley had a sheriff arrest Fay and caused Fay to be handcuffed until he agreed to Oatley's terms for repayment of the business debt. *Id.* A circuit court cancelled the notes and Oatley appealed. *Id.* at 59–60, [*56]. The supreme court affirmed. *Id.* It

wrote, "Public policy will not permit the process of the State to be so perverted and abused, and all contracts growing out of such perversion and abuse are for that reason utterly void." *Id.* at 59, [*55].

¶ 16.   In 1901, the supreme court addressed an action brought by grain commission merchants against a Sheboygan county man for money advanced on his behalf at the Chicago Board of Trade to purchase wheat futures. *Bartlett v. Collins*, 109 Wis. 477, 478, 85 N.W. 703 (1901). The Sheboygan county man raised an affirmative defense that the contract was void because it was a gambling transaction. *Id.* at 478–79. In reversing because of an error in the jury instructions, *id.* at 483–84, the supreme court wrote, "It is a universal principle that the courts of no state will hold valid any contract which is injurious to the public rights of its people, offends their morals, contravenes their policy, or violates a public law." *Id.* at 481–82.

¶ 17.   More recently, we refused to enforce a contract under which Abbott, a nonlawyer, was to be paid a fee for all referrals to Marker, a lawyer, that were favorably resolved. *Abbott*, 295 Wis. 2d 636, ¶ 2. In affirming the circuit court's order dismissing the suit for failure to state a claim, we wrote, "Although the fact that the agreement between Marker and Abbott is directly contrary to statute is reason enough for us to decline to enforce the contract as a matter of law, it is also unenforceable on public policy grounds." *Id.*, ¶¶ 5, 13.

■

¶ 18.   Stanley, recognizing that we would not enforce a contract that assisted him in skirting a statutory duty to fully disclose all of his assets, offers the alternative argument that if the contract is void and unenforceable, the parties should be returned to their pre-

187

contract positions. In other words, Stanley asserts that he should get the parcel back even if we refuse to find a breach of contract. But, Stanley is wrong:

> The general rule is that both at law and in equity a court will not aid either party to an illegal agreement, whether executory or executed, but leaves the parties where it finds them. There are exceptions to this rule. One is where the parties are not in *pari delicto*. Another is where there is a slight illegality and recovery of anything transferred is permitted if necessary to prevent a harsh forfeiture.

*Venisek v. Draski*, 35 Wis. 2d 38, 50, 150 N.W.2d 347 (1967) (footnotes omitted).

¶ 19. "*In pari delicto potior est conditio defendentis* is a doctrine which states that in the case of equal fault, the position of the defendant is stronger." *Evans v. Cameron*, 121 Wis. 2d 421, 426–427, 360 N.W.2d 25 (1985). This doctrine is an application of the principle of public policy that when there is an illegal contract, the courts will leave the parties where they found them. *Abbott*, 295 Wis. 2d 636, ¶ 6. In *Evans*, the supreme court explained that there are exceptions:

> And indeed in cases where both parties are *in delicto* concurring in an illegal act, it does not always follow that they stand *in pari delicto;* for there may be, and often are, very different degrees in their guilt. One party may act under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age; so that his guilt may be far less in degree than that of his associate in the offense. And besides, there may be on the part of the court itself a necessity of supporting the public interests or public policy in many cases, however reprehensible the acts of the parties may be.

*Evans*, 121 Wis. 2d at 427 (citation omitted).

¶ 20.  We are hard pressed to find that Stanley was under "oppression, imposition, hardship, undue influence, or great inequality of condition or age" when he signed the contract. *See id.* Stanley prepared the contract and the quit claim deed with the intent to evade his statutory obligation. Stanley's guilt is far greater in degree than Thomas' guilt.

¶ 21.  Stanley concocted a scheme to avoid his statutory duty to fully disclose all assets to his wife and the family court. His belief that gifted property is never subject to division by the family court is flawed and does not excuse or justify his actions. The contract between Stanley and Thomas is void and unenforceable because it assisted Stanley in violating a statute and public policy. Because the court does not reward the perpetrator of a fraud upon the court, we affirm the trial court's decision to void the contract and permit the parcel to be titled in Thomas' name.

¶ 22.  The trial court should advise the family court that a parcel of real property was not disclosed as required by WIS. STAT. § 767.127(1). The files should be referred to the district attorney for Green Lake county for consideration of filing perjury charges against Stanley under § 767.127(1).

¶ 23.  This resolution does not leave Rosalie, Stanley's former wife, without any recourse. She can seek to have the family court divide the gifted real estate parcel by proving that it would be a hardship not to include it in the marital estate. WIS. STAT. § 767.61(2)(b). Rosalie is free to ask the family court to impose a constructive trust on the parcel under WIS. STAT. § 767.127(5), which provides:

> FAILURE TO DISCLOSE; CONSTRUCTIVE TRUST. If a party intentionally or negligently fails to disclose information

189

required by sub. (1) and as a result any asset with a fair market value of $500 or more is omitted from the final distribution of property, the party aggrieved by the nondisclosure may at any time petition the court granting the annulment, divorce, or legal separation to declare the creation of a constructive trust as to all undisclosed assets, for the benefit of the parties and their minor or dependent children, if any, with the party in whose name the assets are held declared the constructive trustee. The trust shall include such terms and conditions as the court may determine. The court shall grant the petition upon a finding of a failure to disclose assets as required under sub. (1).

*By the Court.*—Judgment affirmed and cause remanded with directions.

¶ 24. SNYDER, J. (*dissenting*). On July 28, 2004, Stanley Jezeski and his brother, Thomas, entered into a real estate contract with the sole and intentional purpose of hiding an asset from a Wisconsin family court during Stanley's divorce from his spouse, Rosalie. The contract, accompanied by a quitclaim deed from Stanley to Thomas, vested title to the asset in Thomas "until such time as [Stanley's] divorce . . . becomes finalized." The divorce was finalized on September 11, 2006. The sole and specific purpose of the contract being satisfied, Stanley then demanded that Thomas honor the contract and return the concealed asset to him. Thomas refused. Because Thomas failed to honor the terms of the contract, Stanley sued for breach of contract in the same Wisconsin court system.[1]

---

[1] This factual background is undisputed. I am not making it up.

¶ 25. After a bench trial, the trial court found that "the purpose of the transfer on a temporary basis to Thomas was to avoid consideration of this property in the divorce proceeding." The trial court then held in relevant part:

> I am not going to enforce a contract that I think is intended to protect real estate from [Rosalie] . . . because the purpose [of the real estate contract] was to hide assets [from a Wisconsin circuit court].

¶ 26. In spite of the trial court's tacit finding that the purpose of the contract was to fraudulently hide an asset from Rosalie and a Wisconsin court of record, and contrary to the court's admonition that it would not enforce such a contract, the trial court entered a decision resulting in the enforcement of the illegal contract in favor of Thomas, Stanley's co-conspirator in imposing a fraud upon the Wisconsin family court. The trial court dismissed Stanley's complaint by addressing only the allegation of breach of contract; it did not address the illegality of the contract itself.

¶ 27. The majority agrees with the trial court's findings:

> The contract itself establishes that Stanley wanted to keep the parcel out of the potential reach of the family court. The contract recites that the sole purpose is so Thomas can temporarily own the parcel "until such time as [Stanley's] *divorce* from Rosalie [] becomes finalized. Once [the] *divorce* becomes finalized, I Thomas P. Jezeski do hereby agree to transfer the [parcel], back [to Stanley]."

Majority, ¶ 9.

¶ 28. The majority presents the appellate issue as to whether or not a contract to hide a substantial asset from a spouse and the family court during a divorce is

191

enforceable. I agree. The majority concludes that "[t]he contract is invalid and unenforceable because it assists Stanley in violating a civil statute to which a penalty is attached." Majority, ¶ 14; *see Abbott v. Marker*, 2006 WI App 174, ¶ 6, 295 Wis. 2d 636, 722 N.W.2d 162. Again, I agree. Inexplicably, the majority opinion then proceeds to resolve the issue by fashioning an equitable basis upon which to enforce the results of the invalid, unenforceable, illegal agreement in favor of Thomas, a participant in the fraudulent act. In this, I cannot agree.

¶ 29.  "A contract is considered illegal when its formation or performance is forbidden by civil or criminal statute . . . ." *Abbott*, 295 Wis. 2d 636, ¶ 6. Each party in a divorce action has a statutory obligation to disclose all assets, no matter how acquired. WIS. STAT. § 767.127(1). Stanley and Thomas knowingly and intentionally entered into an illegal contract forbidden by law. That being undisputed, I dissent from the enforcement of the real estate contract in any and all respects. The outcome must not favor Thomas, a co-conspirator in the fraud perpetrated against our courts.

¶ 30.  In support of their enforcement of the contract, the majority acknowledges the general rule applicable to illegal agreements:  "The general rule is that both at law and in equity a court *will not aid either party to an illegal agreement,* whether executory or executed, *but leaves the parties where it finds them.*" *Venisek v. Draski*, 35 Wis. 2d 38, 50, 150 N.W.2d 347 (1967) (emphasis added). This general rule also has its exceptions, one being "where the parties are not *in pari delicto.*" *Id.* In pari delicto means equally at fault. BLACK'S LAW DICTIONARY 806 (8th ed. 2004).

¶ 31.  In spite of its acknowledgment that the contract is illegal ab initio, the majority then balances

the culpability of Stanley and Thomas, and applies *in pari delicto potior est conditio defendentis,* which directs that in the case of equal fault, the position of the defendant is stronger. *See Evans v. Cameron,* 121 Wis. 2d 421, 426–27, 360 N.W.2d 25 (1985). The majority applies the doctrine to the benefit of Thomas, concluding that "Stanley's guilt is far greater in degree than Thomas' guilt." Majority, ¶ 20. The majority does so by becoming an advocate for Thomas and providing an analysis and conclusion not raised or argued in the trial court.[2]

¶ 32. I disagree with the majority's conclusion that the degree of guilt between the brothers is distinguishable. The fraud upon our system of law could not have occurred without Thomas' involvement. *Evans* addressed whether a plaintiff client was in delicto with

---

[2] Thomas did not file an appellate brief. Consequently, he concedes that Stanley's contentions that the contract was a fraudulent transfer/conveyance, that the contract is void ab initio, and that the asset must be reinstated to Stanley. *See State ex rel. Blackdeer v. Levis Twp.,* 176 Wis. 2d 252, 260, 500 N.W.2d 339 (Ct. App. 1993); *Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.,* 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979). In proceeding as it has, the majority has acted as both judge and advocate for Thomas. When we independently develop a litigant's argument, we fail in our mandate to act as a neutral, impartial reviewing judicial body. *See State v. Pettit,* 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992); *Gardner v. Gardner,* 190 Wis. 2d 216, 239 n.3; 527 N.W.2d 701 (Ct. App. 1994). Applying WIS. STAT. RULE 809.83(2), the trial court order here should have been summarily reversed. Interestingly, the majority opts not to summarily reverse "because it would sanction a fraud upon the court." Majority, ¶ 1 n.1. By affirming, however, the majority not only sanctions a fraud upon the family court, but allows one perpetrator of the fraud to profit well from it.

her retained attorney when she followed his advice to lie during her bankruptcy proceeding. *Evans*, 121 Wis. 2d at 426, 427. The court explained that even where two people "are *in delicto* concurring in an illegal act, it does not always follow that they stand *in pari delicto;* for there may be, and often are, very different degrees in their guilt." *Id.* at 427 (citation omitted). *Evans* concluded that the client was in pari delicto with the defendant attorney; in other words, the lawyer and the client were equally at fault for the client's perjury. *Id.* Although the court recognized that fault may be a matter of degree, where the "wrongfulness of [an act] . . . is apparent," all participants in that act stand in pari delicto. *See id.* at 428.

¶ 33. Likewise, Thomas stands in pari delicto with Stanley here. As in *Evans*, the wrongfulness of the act here was apparent to both parties. Thomas was a knowing and voluntary participant in a fraud on the family court, not to mention on Rosalie. What distinguishes this case from *Evans*, however, is more important than what makes it similar. In *Evans*, the bankruptcy trustee discovered Evans' lie about her assets and as a result Evans faced possible prosecution for perjury. *Evans*, 121 Wis. 2d at 425. The bankruptcy court had the opportunity to address the initial fraud, and the only remaining dispute was between two equally culpable parties, Evans and her lawyer. Here, however, Rosalie and the family court, both of them duped in this scheme, have had no opportunity to address the fraud perpetrated by Stanley and Thomas. Thus, the equities to be weighed are not simply between the two wrongdoers. As the *Evans* court recognized, the doctrine of *in pari delicto* is "subject to qualifications," and "there may be on the part of the court itself a necessity of supporting the public interests or public

194

policy," when deciding whether to invoke in pari delicto. *See id.* at 427 (citation omitted). Because a court should not "aid *either* party to an illegal agreement," and because the fraud on the family court and on Rosalie must be addressed, this case presents an exception to the rule that the court should "leave[] the parties where it finds them." *See Venisek,* 35 Wis. 2d at 50 (emphasis added).

¶ 34.    The real estate contract is unambiguously illegal in its sole, principal and initial purpose:    *to impose a fraud upon the courts and laws of the State of Wisconsin.* The trial court's ruling in favor of Thomas must be reversed. Stanley was obligated to disclose the asset to the family court, even if acquired as a gift. *See* Wis. Stat. § 767.127(1); Wis. Stat. § 767.61(1), (2)(a)1., (2)(b). Neither Stanley nor his co-conspirator Thomas should be allowed to benefit from a fraud imposed upon the courts of this State. The matter should be remanded to the trial court to take appropriate action based upon the asset belonging to Stanley now, and at the time of the divorce proceeding and judgment.[3]

---

[5] The majority recommends that the file be returned to circuit court and that "[t]he trial court should advise the family court that a parcel of real property was not disclosed as required by Wis. Stat. § 767.127(1)." Majority, ¶ 22. This advice to the family court occurs after the majority has vested the legal title of the real estate in Thomas, effectively removing the asset from the reach of the family court. While the majority states that it will not speculate on how the family court might have treated the hidden parcel during the divorce proceedings, it does note that at the time of the divorce "the parties had few assets and a large number of debts." Majority, ¶ 13. While this court should not speculate, neither should we deny the family court the full opportunity to properly consider the concealed asset under the applicable family law statutes.

¶ 35. After resolving this appeal in Thomas' favor, the majority recommends that "[t]he files should be referred to the district attorney for Green Lake county for consideration of filing perjury charges against Stanley under [Wis. Stat.] § 767.127(1)." Majority, ¶ 22. I agree that the matter should be referred to the district attorney, as well as to the family court for appropriate action under the family code. However, I disagree the referral should be limited to Stanley. Both Stanley and Thomas knowingly entered into a fraudulent, illegal act with the sole purpose of violating Wisconsin law. Neither should be able to benefit from their joint act to perpetrate a fraud upon the Wisconsin family court. Both should answer for their egregious acts.