COURT OF APPEALS
DECISION
DATED AND FILED

April 21, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP621**

Cir. Ct. No. **2018SC3760**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

KAREN MAYO,

PLAINTIFF-RESPONDENT,

V.

MODS INTERNATIONAL, INC.,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Outagamie County: JOHN A. DES JARDINS, Judge. *Affirmed*.

¶1    STARK, P.J.[1]  MODS International, Inc., appeals a small claims judgment awarding Karen Mayo $10,000, plus costs.  MODS argues the circuit court erred by determining that MODS was not entitled to an equitable adjustment

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

of the time in which to complete its obligations under the parties' contract. MODS also argues that Mayo did not terminate the contract for cause, and MODS is therefore entitled to costs incurred as a result of the termination, along with overhead and profit on work not executed. We reject MODS' arguments and affirm.

## BACKGROUND

¶2  MODS is located in Appleton, Wisconsin. It designs and builds modular structures using storage containers. Mayo entered into two contracts with MODS to build and install an Auxiliary Dwelling Unit (ADU)—i.e., a tiny house—consisting of two storage containers in the backyard of Mayo's residence in Los Angeles, California.

¶3  Mayo signed the first contract—hereinafter, the design contract—on December 15, 2017. Under the design contract, which was labeled "Document No: OAB105," Mayo retained MODS as an architect to design and engineer the ADU. Mayo agreed to pay MODS $4000 for its design services. The design contract provided that payment would be "deducted from the total agreed[-]to project cost, once a construction contract is signed by both parties."

¶4  Mayo signed the second contract—hereinafter, the construction contract—on December 21, 2017. Under the construction contract, which was labeled "Document No. OCSP105," Mayo retained MODS to act as a contractor to build the ADU and to install it on her property. The construction contract required MODS to install foundation piers for the ADU during the first week of January 2018 and to deliver and install the ADU on or before January 30, 2018. In addition, § 11.1 of the construction contract provided: "Time limits stated in the Contract Documents are of the essence of the Contract." The "Total Price" set

2

forth in the construction contract was $39,300. Mayo paid MODS $15,650 upon signing the construction contract, in addition to the $4000 she had already paid under the design contract.

¶5    MODS failed to install the piers for the ADU during the first week of January 2018 and failed to deliver and install the ADU on or before January 30, 2018. In fact, MODS had not yet completed those tasks as of August 2018. Consequently, on August 20, 2018, Mayo sent an email to MODS stating that effective August 24, she was "exercising [her] cancellation rights under Document OAB105 (MODS agreement dated December 13, 2017) Article 4" due to MODS' "inability to complete the contract milestones and deliver the product as indicated in the attache [sic] agreement." As a result of the termination, Mayo asked MODS to refund her $15,000 of the $19,650 she had already paid.

¶6    MODS refused to refund any money to Mayo. In November 2018, Mayo filed the instant small claims lawsuit against MODS in Outagamie County, seeking to recover the small claims judgment limit of $10,000. The matter was initially heard by a court commissioner, who found in favor of Mayo and awarded her $10,000, plus costs.

¶7    MODS then demanded a trial de novo before the circuit court. At the trial de novo, the evidence showed that MODS' delay in installing the ADU was due at least in part to difficulties in obtaining a building permit. In particular, a MODS employee testified that he had worked "all over the United States," and the process for obtaining a building permit for Mayo's project in Los Angeles County was "one of the most difficult [he had] ever dealt with." The employee further testified that he never stopped attempting to obtain a building permit for the project. The parties disputed, however, whether Mayo or MODS was

3

ultimately responsible for obtaining the permit. MODS also argued at trial that the delay in completing Mayo's project was partially caused by changes to the design. As such, MODS asserted the delay was caused by forces outside its control, and MODS was therefore entitled to an equitable adjustment of the deadline to complete the work under § 11.2 of the construction contract.

¶8    MODS also asserted at trial that Mayo's email dated August 20, 2018, terminated only the design contract, which had already been completed as of that time, rather than the construction contract. Moreover, MODS contended that any termination of the construction contract was a termination for Mayo's convenience under § 16.3 of that contract, rather than a termination for cause under § 16.2. MODS therefore argued that under § 16.3 of the construction contract, it was entitled to payment for "all the work executed and costs incurred by reason of [Mayo's] termination, along with reasonable overhead and profit on the work not executed."[2]

¶9    After considering the evidence presented at trial, the circuit court issued an oral ruling in favor of Mayo. The court concluded that under the construction contract, it was "clearly" MODS' responsibility to obtain the necessary building permit. The court also found that: (1) when entering into the construction contract, Mayo relied on MODS' representations that it was familiar with California law and had completed projects in California; (2) MODS did not exercise due diligence in investigating Mayo's property to determine any

_____

[2] There is nothing in the record indicating that MODS filed a counterclaim against Mayo seeking to recover damages under § 16.3 of the construction contract. On appeal, MODS does not argue that the circuit court should have awarded it damages in a specific amount under § 16.3. Instead, it appears MODS' position is that § 16.3 provided a basis for it to retain the money Mayo had already paid.

difficulties that might exist; (3) the contract required the foundation piers for the ADU to be completed in the first week of January 2018 and the project to be completed by February 2018; (4) MODS failed to meet those deadlines; and (5) the delay was MODS' fault and was within MODS' control because MODS had represented to Mayo that it was familiar with California law, but it ultimately did not understand "the particulars of [obtaining a building permit] in L.A. County."

¶10    Based on its findings, the circuit court concluded MODS was not entitled to an equitable adjustment of the time to complete its work under § 11.2 of the construction contract.  The court also concluded that MODS had substantially breached the construction contract by failing to comply with the contractual time limits.  Accordingly, the court concluded Mayo had terminated the construction contract for cause under § 16.2, rather than for her own convenience under § 16.3. It therefore awarded Mayo the $10,000 she sought, plus costs.  MODS now appeals.

## DISCUSSION

¶11    As an initial matter, we observe that Mayo did not timely file a response brief in this appeal.  Mayo ultimately filed a late response brief, but it was riddled with defects.  We declined to accept Mayo's noncompliant response brief, but we gave her additional time to file a replacement brief.  Mayo failed to do so.

¶12    We may summarily reverse a judgment or order if the respondent fails to file an appellate brief. *See State v. R.R.R.*, 166 Wis. 2d 306, 311, 479 N.W.2d 237 (Ct. App. 1991) (citing WIS. STAT. RULE 809.83(2)).  We are not, however, required to do so. *See, e.g.*, *Jezeski v. Jezeski*, 2009 WI App 8, ¶1 n.1,

316 Wis. 2d 178, 763 N.W.2d 176 (2008) (affirming the circuit court's decision even though the respondent did not file a brief). In this case, we exercise our discretion to address and reject MODS' appellate arguments on their merits, even though Mayo did not timely file a compliant response brief.

¶13     We also observe that MODS' appellate brief at times refers to the parties by their party designations, rather than by name, in violation of WIS. STAT. RULE 809.19(1)(i). In addition, in the "Statement of Facts" and "Argument" sections of its brief, MODS repeatedly cites to its own appendix, rather than to the appellate record, in violation of RULE 809.19(1)(d) and (e). *See **United Rentals, Inc. v. City of Madison***, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322 (observing that citations to a party's appendix, rather than the record, are improper). We admonish MODS, which is self-represented on appeal,[3] that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2); *see also **Waushara Cty. v. Graf***, 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992) (stating that pro se appellants must generally satisfy all procedural requirements and are bound by the same rules that apply to attorneys on appeal).

¶14     Turning to the merits, MODS argues the circuit court erred in two ways by granting Mayo a judgment in the amount of $10,000, plus costs. First, MODS contends the court erred by concluding MODS was not entitled to an equitable adjustment of the time to complete the construction and installation of the ADU under § 11.2 of the construction contract. Second, MODS argues Mayo terminated the construction contract for her own convenience under § 16.3 of the

---

3   *See* WIS. STAT. § 799.06(2).

contract, rather than for cause under § 16.2, and MODS is therefore entitled to the costs it incurred as a result of the termination, along with overhead and profit on work not executed.

¶15     MODS asserts our standard of review with respect to both of these issues is de novo because the interpretation of a written contract presents a question of law for our independent review.  Although MODS is correct that contract interpretation is reviewed de novo, *see* ***Tang v. C.A.R.S. Prot. Plus, Inc.***, 2007 WI App 134, ¶27, 301 Wis. 2d 752, 734 N.W.2d 169, the focus of MODS' appellate arguments is not on the circuit court's interpretation of the construction contract, but on the court's underlying factual findings.  We will uphold a circuit court's factual findings unless they are clearly erroneous.  WIS. STAT. § 805.17(2).  A finding of fact is clearly erroneous when it is against the great weight and clear preponderance of the evidence.  ***Phelps v. Physicians Ins. Co. of Wis.***, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615.

¶16     With respect to MODS' equitable adjustment argument, § 11.2 of the construction contract provides: "If the Contractor is delayed at any time in progress of the Work by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control, the Contract Time shall be subject to equitable adjustment."  On appeal, MODS argues it is entitled to an equitable adjustment under § 11.2 because "site plan changes were still being made" in March and April 2018.  This argument, however, is undeveloped.  MODS does not explain what changes were made to the site plan in March and April 2018 or how they delayed the project, nor does it assert that Mayo was responsible for those changes.  In addition, MODS does not explain why any changes made in March and April 2018 resulted in MODS' continued failure to install the ADU as of August 20, 2018—the date

Mayo terminated the contract. We need not address undeveloped arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶17 MODS also argues that it was entitled to an equitable adjustment under § 11.2 of the construction contract because its progress was delayed by "other causes beyond the Contractor's control"—specifically, by the difficulties it encountered in obtaining a building permit.[4] This argument, however, ignores the circuit court's factual findings.

¶18 The circuit court expressly found that the delay in obtaining the building permit was MODS' fault because MODS had represented to Mayo that it was familiar with California law, but it ultimately did not understand "the particulars of [obtaining a building permit] in L.A. County." The court further found that MODS did not exercise due diligence in investigating Mayo's property to determine any difficulties that might exist. Thus, the court implicitly found that MODS should have investigated any issues regarding Mayo's property and the requirements for obtaining a building permit before it entered into a contract requiring it to complete the project by January 30, 2018. For these reasons, the court found that the delay in installing the ADU was not caused by forces outside MODS' control. The court's findings are supported by the evidence introduced at trial and are not clearly erroneous. In light of these findings, the court properly concluded MODS was not entitled to an equitable adjustment of the time to complete its work under § 11.2 of the construction contract.

---

[4] Although MODS disputed in the circuit court whether it was responsible for obtaining a building permit, it concedes on appeal that it was "ultimately responsible to obtain the building permit for this project."

¶19 MODS next argues that Mayo did not terminate the construction contract for cause. In making this argument, MODS first asserts that Mayo never terminated the construction contract because her August 20, 2018 email informed MODS that she was "exercising [her] cancellation rights under Document OAB105"—i.e., the design contract. However, by subsequently arguing that Mayo terminated the construction contract for her own convenience, rather than for cause, and that MODS is therefore entitled to payment under § 16.3 of the construction contract, MODS tacitly concedes that the construction contract was, in fact, terminated. Moreover, any argument that Mayo terminated only the design contract ignores § 6.1 of the construction contract, which states that the construction contract "represents the entire and integrated agreement between the parties and supersedes prior negotiations, representations or agreements, either written or oral."

¶20 Sections 16.2 and 16.3 of the construction contract address termination of the contract by the owner. Section 16.2, entitled "Termination by the Owner for Cause," states Mayo may terminate the construction contract if MODS, among other things, is "guilty of a substantial breach of a provision of the Contract Documents." Section 16.3, entitled "Termination by the Owner for Convenience," states Mayo "may, at any time, terminate the Contract for [Mayo's] convenience and without cause." However, in that case, MODS "shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with a reasonable overhead and profit on the Work not executed."

¶21 Again, MODS' argument that the circuit court erred by determining Mayo terminated the construction contract for cause under § 16.2 ignores the court's factual findings. As noted above, the court found that the contract required

9

MODS to complete the piers for the ADU in the first week of January 2018 and to complete the project by February 2018. The court further found that MODS failed to meet those deadlines. Moreover, the court found that the delay was MODS' fault because MODS did not exercise due diligence in investigating Mayo's property and because—contrary to MODS' representations to Mayo—MODS was not familiar with the process for obtaining a building permit in Los Angeles County. Again, these findings are not clearly erroneous.

¶22 Based on its findings, the circuit court concluded Mayo terminated the construction contract due to a substantial breach—specifically, MODS' failure to comply with the contractual time limits. We agree that MODS' failure to complete its work more than six months after the contractual deadline elapsed was a substantial breach of the construction contract. This is particularly true given that § 11.1 of the construction contract expressly states the contractual time limits are "of the essence of the Contract." MODS' sole argument that no substantial breach occurred is premised on its assertion that it "should have been given additional time to perform the [construction] contract" under § 11.2. We have already concluded, however, that MODS was not entitled to an equitable adjustment of the contractual time limits under that section.

¶23 Because MODS substantially breached the construction contract, the circuit court properly concluded that Mayo terminated that contract for cause under § 16.2, rather than for her own convenience under § 16.3. As such, the court correctly determined that MODS was not entitled to any costs incurred as a result of the termination or to any overhead or profit on work not executed. Instead, the court properly granted Mayo judgment in the amount of $10,000, plus costs.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.