COURT OF APPEALS
DECISION
DATED AND FILED

August 26, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1967**

STATE OF WISCONSIN

Cir. Ct. No. 2017FA1317

IN COURT OF APPEALS
DISTRICT I

LORENA LEZAMA,

    JOINT-PETITIONER-RESPONDENT,

  V.

SALVADOR LEZAMA,

    JOINT-PETITIONER-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: TIMOTHY M. WITKOWIAK, Judge. *Affirmed*.

Before White, C.J., Colón, P.J., and Donald, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Salvador Lezama appeals from the order imposing a constructive trust pursuant to WIS. STAT. § 767.127(5) (2023-24)[1] in favor of his former wife, Lorena Lezama, over his pension that accrued during the marriage, and ordering the parties to obtain a Qualified Domestic Relations Order (QDRO) to equally divide their interests. Salvador argues that Lorena's motion was untimely and the circuit court erred when it granted post-judgment relief. We conclude that the circuit court did not erroneously exercise its discretion in this matter. We affirm.

## BACKGROUND

¶2 Salvador and Lorena filed a joint petition for divorce with minor children in February 2017. The case proceeded with pretrial hearings in July, September, and November 2017, with the final divorce judgment ordered at a hearing in February 2018.[2] Lorena filed a financial disclosure statement. Salvador did not appear or file any documents in the divorce proceedings, including a financial disclosure statement. After Salvador did not participate in the hearings, despite personal service with an order to appear, the trial court proceeded with a default divorce.

¶3 The divorce case was delayed by a stay due to a pending Chapter 13 bankruptcy. At a hearing during the stay, Lorena requested 50% of Salvador's

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version. As the parties have the same last name, we refer to them by their first names.

[2] The Honorable Michael J. Dwyer presided over the Lezamas' divorce. We refer to Judge Dwyer as the trial court.

retirement accounts, a category that had originally been listed as "none" in Lorena's financial disclosure.

¶4      In the divorce judgment, findings of fact, and conclusions of law from February 2018, the trial court found Salvador in default for having actual notice of the proceedings, refusing to participate, and failing to appear. Relevant to the issue of retirement accounts, the court awarded Lorena "50% of any retirement interests held by [Salvador] at the time of divorce." The court ordered Salvador not to withdraw or reduce his retirement funds until the interests were divided, or February 14, 2019, one year from the date of the divorce. Lorena was responsible for discovering if any accounts existed and to arrange the legal documents to divide them. The court set forth that "[i]f the accounts are not divided by February 14, 2019, Petitioner's entitlement to them shall lapse. The court will grant petitioner an extension of time to complete this task, if she shows that she has made a good faith effort to do so."

¶5      In December 2021, Salvador moved to modify the maintenance award, asserting that Lorena had a change in income. In January 2022, Salvador filed a financial disclosure statement for the first time in the case, which included a wage statement. The wage statement had a line item for pension contributions. In March 2022, Lorena, by counsel, filed an updated financial disclosure statement. Later that month, a court commissioner denied Salvador's motion to modify maintenance.

¶6    In May 2023, Lorena moved for the circuit court to create a constructive trust over Salvador's pension, for the court to find him in contempt, and to extend time to submit a QDRO.[3]

¶7    The court heard Lorena's motions on August 24, 2022, May 24, 2023, and September 9, 2023. Lorena testified that she had help from the Justice Center to fill out forms for the divorce.[4] She testified that in the divorce filing, she submitted a financial disclosure, and requested child support, maintenance, and half of Salvador's retirement accounts. Salvador did not file a financial disclosure or make any court appearances, despite the court's orders to do so. Lorena testified even though her English has improved, she did not understand it well at the time of the divorce filing and used an interpreter throughout all proceedings.

¶8    Lorena testified that she and her husband filed for bankruptcy with an attorney shortly before the divorce, and that the house she was awarded in the divorce had been in foreclosure and underwater in value. Lorena recalled that during the divorce hearings, she confirmed Salvador knew about the proceedings because of a text message he sent, which she described as "nasty, gross, disrespectful." She recalled her testimony at the divorce hearing when the trial court asked if she knew whether Salvador had any retirement accounts and she replied, "I honestly don't."

---

[3] The Honorable Timothy M. Witkowiak presided over Lorena's post-judgment motions and imposed the constructive trust. We refer to Judge Witkowiak as the circuit court.

[4] The trial and circuit courts both discussed Lorena receiving assistance with divorce forms at the "Justice Center." This refers to the Milwaukee Justice Center, a self-help center in the Milwaukee County Courthouse.

¶9 Lorena testified about a lack of success in previous efforts to get information from Salvador's employer. She testified that during the house foreclosure, she attempted to contact Salvador's employer for a pay stub, and the company told her that Salvador had to request it. She testified that she did not know the differences between various types of retirement accounts, she did not know how to procure a QDRO, and she did not have funds to hire an attorney for assistance.

¶10 Lorena testified about the schedule of property filed with her and Salvador's joint bankruptcy petition in August 2016. The record reflects that the schedule listed "Union 76" under the pension and retirement section. It also listed hunting guns under personal property. Lorena testified she and Salvador both gave information to the bankruptcy attorney. Lorena testified that she did not know what a pension was, she did not know that Salvador had a pension, and she did not know what was in letters from the union that came to their house. She also testified she did not list the hunting guns.

¶11 When asked why she asked for half of any retirement accounts in the September 2017 pretrial conference, Lorena testified that the Justice Center helped her fill out the divorce paperwork and informed her that she could request half of his retirement accounts, so she did. Lorena testified that she had no idea how to get information on Salvador's pension. Lorena testified that she relied upon her bankruptcy attorney to arrange the deed on the house and on the Justice Center to set up child support and maintenance garnishments.

¶12 The circuit court also heard testimony from Salvador, who did not deny refusing to participate in the divorce, stating that he "never filed anything"

and he did not "deny representing any information." He testified that he was not asked about his pension, so he did not disclose his pension.

¶13 Salvador was shown the initial court filings for the divorce from July 2017; however, he testified that he could not read English and he only signed the document where his daughter told him to sign, he did not understand what he was signing. He stated he was not trying to hide anything, he was giving Lorena a chance to pursue anything she wanted, he would let the court decide, and he "simply ignored those documents." When asked if he failed to follow the court order to produce information, Salvador testified that he did not view it that way—from his "point of view, the information was there, it was available." Additionally, he testified that he did not remember meeting with the bankruptcy attorney or giving information.

¶14 The circuit court issued an oral ruling, which was later memorialized in a written order. The court reviewed that it heard testimony from Lorena and Salvador and viewed the documentary evidence from the divorce. The court considered what would have been fair at the time of the property division in the divorce and concluded that a QDRO dividing the pension interest would have been fair. The court then considered whether Salvador disclosed the pension and the court found that he did not. The court found that the financial forms submitted at the time of the divorce did not disclose the pension.

¶15 The circuit court then considered that Lorena was a "stay-at-home mom" who "didn't know about the retirement accounts." The court considered that there was "indicia" that a retirement account existed, but not the specifics that would allow Lorena to do more than ask for a retirement account division after a suggestion from the Justice Center.

¶16    The circuit court then analyzed the relevant facts, and found that a constructive trust was appropriate under WIS. STAT. § 767.127(5).  The court then considered whether the divorce judgment precluded Lorena from being granted a constructive trust.  The court concluded it did not, relying on Lorena being pro se, not speaking English, being a housewife with a pending bankruptcy, and having no financial resources for legal advice outside the Justice Center.  The court imposed the constructive trust, pursuant to WIS. STAT. § 767.127(5), in order that a QDRO "with the cost being split by the parties, be executed giving the wife half of the pension during the term of the marriage."  As for Lorena's other motions, the court did not find Salvador in contempt and considered the motion to extend time moot.

¶17    On October 18, 2024, the circuit court signed the order on the motion for a constructive trust.  The court signed the QDRO on December 6, 2023.  This appeal follows.

## DISCUSSION

¶18    Salvador argues that the circuit court erred when it granted the order for the constructive trust to allow for the division of his pension.  He asserts that the order was not timely under the terms of the divorce judgment.  He contends that the court gave unfair consideration to Lorena.  He also argues that the court did not have authority to impose a constructive trust, thus making it an erroneous exercise of discretion.  We disagree on all counts.

¶19    "The question of whether to impose a constructive trust sounds in equity." *Sulzer v. Diedrich*, 2003 WI 90, ¶16, 263 Wis. 2d 496, 664 N.W.2d 641. We apply a two-tiered standard of review.  *Pulkkila v. Pulkkila*, 2020 WI 34, ¶18, 391 Wis. 2d 107, 941 N.W.2d 239.  We independently review questions of law.

*Id.* "We will not set aside the factual findings of the [circuit] court unless they are clearly erroneous." *Stevenson v. Stevenson*, 2009 WI App 29, ¶14, 316 Wis. 2d 442, 765 N.W.2d 811. "[F]indings of fact" are clearly erroneous when they "are unsupported by the record[.]" *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶11, 290 Wis. 2d 264, 714 N.W.2d 530.

¶20 We review the "ultimate decision" of whether to impose a constructive trust under an erroneous exercise of discretion standard. *Pulkkila*, 391 Wis. 2d 107, ¶19. "An exercise of discretion is erroneous if it is based on an error of law or fact." *Id.* We will uphold a discretionary determination "as long as the court 'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.'" *Id.* (citation omitted).

¶21 We first address whether the circuit court's findings support that the elements of constructive trust were established, pursuant to Wis. Stat. § 767.127(5). "Each party in a divorce has a statutory obligation to disclose all assets, no matter how acquired." *Jezeski v. Jezeski*, 2009 WI App 8, ¶12, 316 Wis. 2d 178, 763 N.W.2d 176. Subsection (1) provides a non-exhaustive list of the assets and liabilities required to be disclosed. If a party negligently fails to disclose required information, which results in an asset valued at more than $500 being omitted from the property distribution, "the party aggrieved by the nondisclosure may at any time petition the court granting" the divorce "to declare the creation of a constructive trust as to all undisclosed assets[.]" Sec. 767.127(5). The court shall grant the petition for constructive trust "upon a finding of a failure to disclose assets as required under [§ 767.127(1)]." Sec. 767.127(5).

¶22    The record reflects that the circuit court found that Salvador had "negligently fail[ed] to disclose the pension," the pension had a value greater than $500, and Lorena was the party "aggrieved by the non disclosure." As there is no dispute over whether the asset was valued at over $500 and that Lorena was the aggrieved party, the finding at issue is whether Salvador negligently failed to disclose his pension. There is ample evidence in the record that Salvador did not make any financial disclosures in the divorce. Although Salvador's hearing testimony included a willingness to answer any questions, he testified that no one asked him about his pension. Under WIS. STAT. § 767.127(1), all parties must disclose their assets. While Salvador may believe no one asked him about his pension, the standard divorce forms, in accordance with Wisconsin statutes, ask the parties to disclose the value of retirement or pension benefits. The court's finding that he was negligent in his disclosure is not clearly erroneous. The record reflects clear support for the court's findings. *See Royster-Clark, Inc.*, 290 Wis. 2d 264, ¶11. The court properly ruled that the elements of a constructive trust were established.

¶23    Next, we consider whether the circuit court erroneously exercised its discretion when it imposed the constructive trust. Salvador begins by arguing that the court's decision was erroneous because Lorena's motion was untimely. Lorena did not complete the QDRO within the one-year deadline set in the divorce judgment. Therefore, Salvador contends that Lorena's right to pursue a constructive trust over these assets has lapsed and a constructive trust is not available to her.

¶24    By statute, an aggrieved party "may at any time" move for a constructive trust. WIS. STAT. § 767.127(5). Further, the one-year deadline in the divorce judgment was immediately followed by the statement that "[t]he court will

grant petitioner an extension of time to complete this task, if she shows that she has made a good faith effort to do so." We interpret the divorce judgment to not preclude Lorena from pursuing a constructive trust under § 767.127(5), provided she shows good faith effort for the extension. *Pulkkila*, 391 Wis. 2d 107, ¶18.

¶25 Therefore, we consider the circuit court's findings related to Lorena's good faith effort. The record reflects that Lorena moved for an extension of time and testified that she did not understand what retirement accounts were, did not know what retirement accounts Salvador had, and previously lacked financial resources to hire an attorney. She acted as soon as she had specific information about the pension submitted with Salvador's maintenance modification motion. The court noted that Lorena received assistance from the Justice Center for her divorce, and the court considered attempting to find and secure retirement interests as outside the scope of that organization. We conclude that the court's findings are not clearly erroneous and we interpret the court as finding she made good faith efforts to proceed. Therefore, we conclude that her motion was not untimely.[5]

¶26 Salvador next argues that the circuit court's discretionary decision to impose the constructive trust was erroneous because the court showed a double

---

[5] Because we conclude the timeliness of this motion is governed by WIS. STAT. § 767.127, we do not address Salvador's argument that Lorena has not shown excusable neglect to seek relief from judgment under WIS. STAT. § 806.07. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

Additionally, Salvador refashions the timeliness argument to assert that the circuit court did not have authority to order a QDRO because in doing so, the court overrules the deadline in the divorce judgment. Because we would analyze and reach the same conclusion as we did on the timeliness of Lorena's motion, we do not address this further.

standard and unfair consideration to Lorena for not hiring an attorney, using a translator in court, and lacking financial resources—shown by the bankruptcy filing and her time as a stay-at-home mother. For this court to sustain an exercise of discretion, the circuit court's decision must demonstrate "a reasoning process dependent upon facts in, or reasonable inferences from, the record and a conclusion based on proper legal standards." *Holbrook v. Holbrook*, 103 Wis. 2d 327, 340, 309 N.W.2d 343 (Ct. App. 1981).

¶27 Salvador argues it is a double standard that Lorena would benefit from not having an attorney, asserting that it seems property division in divorce is final, unless the party does not have an attorney. The circuit court's observation that reviewing these proceedings would be different if attorneys were involved is not favoring pro se litigants. Salvador also asserts the court unfairly considered Lorena's limited English proficiency. Although Salvador contends that Lorena had more sophistication in legal matters than the court acknowledged—pointing to the bankruptcy, a quit claim deed on the house, and garnishments for child support and maintenance—the record reflects that the court considered Lorena's reliance on her bankruptcy attorney and the Justice Center for these matters. Further, the court also acknowledged both parties had challenges understanding legal documents in English.

¶28 The circuit court's decision imposing a constructive trust was dependent on the facts in the record showing Salvador's refusal to participate and negligently failing to disclose his pension and in accord with WIS. STAT. § 767.127(5). *See Holbrook*, 103 Wis. 2d at 340. It was not derived from an error in the court's judgment or consideration. We conclude that the court's decision to impose the constructive trust was a reasonable exercise of discretion. *See Pulkkila*, 391 Wis. 2d 107, ¶19.

11

¶29  Finally, Salvador contends that the circuit court did not have authority to impose a constructive trust because the purpose of such a trust is to combat unjust enrichment.  He contends that there was no unjust enrichment in allowing him to keep all of his pension because he earned it through employment and Lorena missed the window under which she could get a QDRO for a share of the pension under the divorce judgment.

¶30  Under Wisconsin law, the court will only impose a constructive trust "where there is a demonstration of unjust enrichment" as well as an "'additional showing' of 'actual or constructive fraud, duress, abuse of confidence, mistake, commission of a wrong, or by any form of unconscionable conduct' that has caused" the person against whom the trust is imposed to hold property that the person "ought not in equity and good conscience to enjoy."  *Id.*, ¶30 (citation omitted).

¶31  Here, the circuit court concluded that if the details of the pension had been known at the time of the divorce judgment in 2018, the pension would have been subject to the court's division of property.  Further, while considering the law of marital property division at divorce and Salvador's pension's proven existence, the court concluded that Salvador would be unjustly enriched to retain full ownership of the pension earned during the years of their marriage.

¶32  The circuit court also found that Salvador negligently failed to disclose the pension, which satisfies the requirement of an "additional showing," here in the form of "unconscionable conduct" which would allow him to hold the

half of the pension that should be awarded to Lorena in equity.[6]  *See id.*; *Stevenson*, 316 Wis. 2d 442, ¶¶1, 13 (reopening a support order when one party negligently failed to disclose all assets at the time of divorce and had the assets been disclosed, the support would have been set differently).  We conclude that the court had the authority to impose the constructive trust.

¶33  "Whether to impose a constructive trust is a discretionary determination that must be made through examination of the relevant facts." *Pulkkila*, 391 Wis. 2d 107, ¶34.  We conclude that the circuit court thoroughly considered the relevant facts in this matter and applied the proper legal standard. We conclude that the court demonstrated a rational decision-making process in reaching its conclusion to impose the constructive trust, one that another reasonable court could reach.  *See Holbrook*, 103 Wis. 2d at 340.  Therefore, we conclude that the court's decision was a reasonable exercise of discretion.

## CONCLUSION

¶34  For the reasons stated above, we conclude that the circuit court's order imposing a constructive trust was a reasonable exercise of discretion.

*By the Court.*—Order affirmed.

---

[6] We note that within the WIS. STAT. § 767.127(5) framework, "[i]t is not necessary that the person against whom the constructive trust is to be imposed be a wrongdoer or know of the wrongdoing initially." *Wilharms v. Wilharms*, 93 Wis. 2d 671, 679, 287 N.W.2d 779 (1980). Salvador's testimony suggests he did not think he was failing to disclose information because he did not believe he was asked directly about the pension.  Nonetheless, Salvador was required to disclose his assets, under § 767.127(1) and he did not do so.  His refusal to participate in the divorce proceedings should not shield his assets from the marital property division.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.